IN RE GUARDIANSHIP OF UGGEN: ISRAELS, Administrator, Appellant, vs. AMBLE, Guardian, Respondent.

*January 14—February 9, 1937.*

*Farnham A. Clark* of Menomonie, for the respondent.

FOWLER, J. The respondent was guardian of an insane ward, and as such received $3,410.28 in cash belonging to his ward on October 2, 1929. The funds were evidenced by a certificate of deposit in the Peoples State Bank of Colfax. He immediately took a time certificate of deposit in that bank payable to himself as guardian for the amount. The certificate of deposit carried four per cent interest. He was told by the banker that he could draw out money at any time on the certificate of deposit. When he needed money for support of his ward or other expenses of administration he turned in the current certificate and took out a new one for the amount of the surrendered certificate with interest, less the amount of cash needed. He continued this practice until the bank closed at the time of the bank moratorium, March 3, 1933. His

last certificate was issued in February 13, 1933, and amounted to $2,582.54. He could have received the cash on his certificate of deposit on demand at any time before the bank closed at the date of the moratorium. He was not an officer of the bank and supposed it was in sound financial condition. He kept the funds in the bank so that he could get money at any time as he might need it for expenses. The ward was confined in an insane asylum, and after a claim for about $1,500 was disposed of in July, 1931, the amounts he would need for his ward and expenses of administration were practically fixed in amount, and the amount he would require for any future period was readily subject to approximate estimate. For a six months' period, the term of the certificates of deposit taken, they were less than $150.

The bank was stabilized, and the guardian received for his certificate of deposit $639.96 cash and a trust certificate for $1,572.56. The ward is now dead and his estate is now payable to his administrator. The guardian by his final account asks that the trust certificate be accepted in lieu of cash. The administrator refuses so to accept it and demands payment in cash of the amount of the trust certificate with interest from its date. The county court found that the guardian used due care and diligence in keeping the funds in the bank on certificates of deposit; held that the funds were not invested; that the funds were placed on deposit so as to be available as required for the care of the ward and expenses of administration; that the funds were properly so held; and approved the account as filed. From the judgment so determining, the administrator appeals.

Cases involving similar situations have recently been before this court. In *Matter of Filardo*, 221 Wis. 589, 267 N. W. 312, and *Estate of George*, 225 Wis. —, 270 N. W. 538, the situations respecting the certificates of deposit materially differed only in that the trustees were officers of the banks in which the funds were deposited, and knew of the

general condition of their banks. In both cases the trustee was held to payment of the amount of the deposits in cash. In the *Filardo Case,* a small deposit of $121 in a Madison bank, made on removal of the guardian to Madison, was held properly made, as for temporary holding and not for investment. In the *George Case,* certificates of deposit were held not proper subjects of investment, and it was intimated that keeping large amounts in a certificate of deposit for more than a year could not be considered a temporary holding. The duty of a trustee appointed by the court in respect to investment of funds is discussed at considerable length in *Estate of Fouks,* 213 Wis. 550, 252 N. W. 160. Two of the accounts of the guardian herein, that of December 31, 1930, and December 31, 1932, the first and last annual reports filed, report the funds of the ward as "invested in" time certificates of deposit in the bank where they were originally deposited. Neither of these reports was "approved" by the county judge. There is no order authorizing the "investment," so that neither of the two requisites mentioned in the *Fouks* opinion appears,—investment in such securities as sec. 231.32, Stats. (1933), prescribes or an order of the county judge authorizing the investment, at least one of which is there said to be necessary to protect the guardian from loss, and doubt is there expressed that an order of the court for investment in nonstatutory securities would protect him. The other accounts of the guardian filed with the county judge merely show the funds of the estate as on hand in cash at the beginning and end of the period covered.

As the guardian himself treated his deposit as an investment, he should not complain if he be held to his word. We are of opinion also that a six months' period is as long as considerable sums should ordinarily be held for temporary purposes by statutory trustees. This period is fixed as the limit in *Re Hazelbaker's Estate,* 113 Pa. Super. 32, 171 Atl. 619, a well-considered case. As matter of common knowl-

edge, United States government bonds and treasury certificates in almost any stated amount of thousands or hundreds are now available to trustees. This was considered in the *Hazelbaker Case, supra,* as a reason for limiting holding for temporary purposes to the term stated.

On March 30, 1930, the Dunn county asylum for the insane filed a claim including a charge for two hundred seventy-two weeks' board and care of the ward at $4.80 per week. It would have been proper for the guardian to have held on checking account in the bank a sufficient sum to provide for payment of this amount when it should be determined by the court. A time certificate of deposit, due at a fixed future date, as were the certificates involved, however, would not render the required amount payable on demand, notwithstanding the oral statements of the bank officials that it would be so paid. Written instruments cannot be so modified by parol statements made prior to or at the time of their execution. Payment of a certificate of deposit could not be compelled until its due date, and partial payments in certificates of deposit are prohibited by statute, sec. 221.33 (2), Stats. 1935. The statements of the bank officials exonerate the guardian from imputation of intentional wrongdoing, but they do not excuse him from not investing the funds received in such securities as sec. 231.32, Stats. 1929, 1931, and 1933, required. It is true that the guardian was entirely free from intentional wrongdoing. He had no reason to doubt the soundness of the bank, and he cannot be charged with negligence in not discovering its insolvency. But this does not excuse him from diligence in properly investing the funds of his ward in statutory securities, or from holding such sums as were proper for temporary purposes in such form as not to be immediately available when required. The guardian's placing of his ward's funds in the bank on certificates of deposit must be considered as an investment; and he must be held to have breached his duty in not investing them in such

securities as the statute required; and he must be required to turn over to the administrator of his ward's estate in cash the amount of the trust certificate with interest thereon at such rate as the county court shall find trust funds invested in securities such as are prescribed by the statute available under the circumstances would have yielded.

*By the Court.*—The judgment of the county court is reversed, with directions to enter a judgment in accordance with the opinion.