IN RE GUARDIANSHIP OF FARNESS: FARNESS, Respondent,
vs. CENTRAL WISCONSIN TRUST COMPANY, Appellant.

*April 5—September 14, 1937.*

For the appellant there were briefs by *Bagley, Spohn, Ross & Stevens* of Madison, and oral argument by *William H. Spohn.*

For the respondent there were briefs by *Gilbert, Ela, Heilman & Raeder,* and oral argument by *G. Burgess Ela* and *Oscar Christianson,* all of Madison.

A brief was also filed by *Fawsett, Shea & Hoyt* of Milwaukee, as *amici curiæ.*

The following opinion was filed May 25, 1937:

MARTIN, J. On the issues made at the hearing in the county court on the guardian's final account, the court found:

"(2) On October 2, 1926, the Central Wisconsin Trust Company as guardian filed its inventory and appraisal; the appraisal was made by it at $270 per share; and that the value of the shares of stock held by the said the Central Wisconsin Trust Company as guardian for Burnette L. Farness was at that time $4,719.98.

"(3) The court finds further that the Central Wisconsin Trust Company has continued without interruption to act as guardian of Burnette L. Farness from the date of its appointment, April 8, 1926, to the present time and has continued to hold the said DeForest Lumber Company stock from the date of its receipt on May 3, 1926, to the present time; that the DeForest Lumber Company is a private corporation organ-

ized under the laws of the state of Wisconsin with its principal place of business at DeForest, Wisconsin, engaged in retail merchandising, *and that said stock was not then and is not now lawful for trust fund investments under the laws of the state of Wisconsin.*

"(4) The court finds further that the book value of the said shares of stock from 1925 to January 1, 1936, was always in excess of the appraised value of $270 per share. That the Central Wisconsin Trust Company knew at the time it took these shares of stock as guardian that they were not proper for trust fund investments and should be sold; that it made no offer to do so except that three years after it received the stock, on June 5, 1929, it offered to sell the stock to Ben Farness, president of the corporation, at $400 a share, which was $130 per share more than the appraised value, and that while the market for the sale of this stock was somewhat restricted, there were some transfers of stock during this period and the stock in question could have been sold but no offer was ever made to sell it except as above found. That other efforts to sell were frequently made, but at prices which were not obtainable.

"(5) The court further finds that the guardian did not make sufficient effort to sell the stock to stockholders of the corporation or to other persons and that it should have sold the stock and converted the investment into legal investments under the law of the state of Wisconsin within a reasonable time after the stock came into its hands and that it did not do so within a reasonable time and the said guardian did not use every reasonable effort to sell the stock."

In addition to the foregoing findings, the court found that if the stock had been converted into legal trust-fund investments, the investment could have earned a reasonable average rate of interest of five per cent per annum throughout the entire period; that the guardian should account to the ward for the full amount of interest which could have been earned, less the dividends received in the sum of $420, and the appraised value of the stock.

The guardian's duty in the premises is fixed by sec. 231.32, Stats., which was in effect at all times material to this pro-

ceeding, and the interpretations placed upon such statute by this court. *Estate of Grotenrath,* 217 Wis. 109, 258 N. W. 453; *Estate of George, ante,* p. 251, 270 N. W. 538, 540, 274 N. W. 294; *Guardianship of Uggen,* 224 Wis. 24, 271 N. W. 326. In *Estate of George, supra,* it was contended on behalf of the trustee that he was only responsible for negligent handling of the securities. The court said:

"But, as to the bank stock and notes, the statute itself makes him negligent upon his failure to convert and reinvest them in such securities as the statute requires. *Estate of Fouks,* 213 Wis. 550, 554, 252 N. W. 160; sec. 231.32, Stats."

There was also in this case a finding of negligence on the part of the trustee resulting in a loss.

There is no finding, nor is there any evidence to sustain a finding, that the stock was not worth as much at the time it was tendered to the respondent as it could have been sold for at any time during the period when the guardian should have converted it. It requires no citation of authorities to the proposition that if the ward sustained any loss by reason of any breach of duty on the part of the guardian, the burden of proof to establish such loss was upon the ward. This court, in the recent case of *Estate of George, supra,* said:

"Humphrey held the securities for nearly a year after the widow's death before resigning, but up to this time there had been no depreciation of the securities. They were of value when he received them as trustee as set forth in the inventory of the estate, and were of the same value when he turned them over to Wendt. As the estate was not damaged by Humphrey's failure to convert the securities and invest the proceeds as required by statute, Humphrey and his bondsmen, who were also parties to the petition for an accounting, were discharged from liability and properly so."

In Restatement of the Law, on liability for breach of trust by failing to sell trust property, § 209 states:

"(1) If the trustee fails to sell trust property which it is his duty to sell, *the beneficiary can charge him with the*

*amount which he would have received if he had properly sold the property, with interest thereon. . . .*

*"Comment: . . . b.* If the trustee fails to sell trust property which it is his duty to sell, the beneficiary can require him to make good any *loss* caused by his failure to sell."

At the time the guardian tendered the stock to respondent it had a book value of $365 per share. From the time that guardian received the stock in May, 1926, until 1930, it was earning from twenty to thirty-three per cent profit on the par value on an original investment of $31,000. The mere fact that the guardian failed to convert the stock into cash and invest the proceeds in securities specified in sec. 231.32, Stats., does not render the guardian liable for damages in the absence of proof that the ward sustained some loss. This she failed to do.

The judgment appealed from must be reversed with directions to enter judgment approving the guardian's final account, and that respondent take the $17^{13}\!/_{27}$ shares of the stock in question heretofore tendered by the guardian.

*By the Court.*—Judgment reversed. Cause remanded with directions to enter judgment in accord with this opinion.

A motion for a rehearing was denied, with $25 costs, on September 14, 1937.