In re Guardianship of Paulsen, Incompetent: Madler, Guardian *ad litem,* Appellant, vs. Matzen, Guardian, and another, Respondents.

*October 13—November 9, 1938.*

*Anthony E. Madler* of Chilton, for the appellant.

*Melvin W. Dewane* of New Holstein, for the respondent Fred Matzen.

For the respondent Fidelity & Casualty Company of New York there was a brief by *Shaw, Muskat & Paulsen* of Milwaukee and *Donald E. Bonk* of Chilton, and oral argument by *Mr. Martin E. Paulsen* and *Mr. Bonk.*

FRITZ, J. So far as material on this appeal the following facts appear without dispute. On January 9, 1919, letters of guardianship were issued to Lina Hansen as guardian of the person and estate of Anna D. Paulsen, then fifty years of age. Theretofore, on December 11, 1918, she had been found insane and mentally incompetent by the county court of Calumet county and committed to the Northern Hospital for the Insane. On March 22, 1921, she was paroled on condition that she remain with her sister; but on June 25, 1921, she was returned to the Manitowoc county asylum, of which she has since been an inmate. On August 2, 1919, Lina Hansen as guardian filed an inventory and appraisal, listing twenty-five shares of stock of the Chilton National Bank appraised at $3,750; and in reports filed in 1919, 1920, 1921, 1922, and 1923 she listed the stock as an asset and reported the receipt of dividends amounting to $150 in 1919 and 1921, and $300 in 1920, 1922, and 1923. Upon the death of Lina Hansen, Fred Matzen was appointed guardian of the estate of Anna D. Paulsen on August 23, 1924. He filed his annual accounts as guardian each year for the years of 1924 to June 16, 1937, inclusive, and in each of them up to and including 1934 listed the bank stock at its appraised value of $3,750; but in his report for 1935, he listed the stock as valueless, and thereafter did not report it as an asset of the estate. He also reported dividends paid on the par value of the stock at the rate of twelve per cent each year to and including 1929; ten per cent in 1930; eight per cent in 1931; and four per cent in 1932. Thereafter no dividends were paid. On August 27, 1932, the bank entered into a stabilization agreement with its depositors, and the comptroller of the currency appointed a conservator on July 30, 1933, and on December 7, 1933, declared the bank insolvent and appointed a receiver, and thereupon the bank suspended and ceased to do business. Its stock not only became valueless,

resulting in a loss to the estate of $3,750, but the guardian was required to pay and paid an assessment of $2,739.12, levied against the stock. He claimed credit in his final account for the loss of $6,489.12. On all of the annual reports and accounts filed by Matzen, as well as his predecessor, as guardian, up to and including his account for 1928, the county judge had, without any prior notice, signed an indorsement in which there was the statement "examined, approved and allowed to be entered of record." The last was signed on February 5, 1929. In addition to the foregoing facts, the trial court found the following facts on evidence which warranted the findings: Throughout the period during which Matzen acted as guardian, he had reasonable cause to believe that Anna D. Paulsen would probably recover from her mental illness, and that her estate and property should be restored to her control, charge, possession, and management; in performing his duties as guardian he had exercised such diligence and prudence as an ordinarily prudent man exercises in his own affairs, and had discharged those duties in entirely good faith and free from any bad faith, and without any negligence or carelessness on his part, either in law or in fact, in his administration of the trust; and notwithstanding due and diligent efforts made by Matzen to sell the bank stock, there was no available market for such sale since February 5, 1929, on account of the general business depression, and although he attempted to dispose thereof by conferring with the bank officers and others to make a sale, he was unable, with due diligence and effort, to find a purchaser. By reason of the approval indorsed on Matzen's annual accounts for the years 1924 to 1928, inclusive, he, as guardian, was justified in believing until February 12, 1931, when he filed his account and report for 1930, that the county court and judge thereof approved his continuing, as guardian, to hold the twenty-five shares of stock as

an investment of the trust; and after February 12, 1931, there was no market for the sale of the stock due to the business depression prevalent throughout the country. Upon those facts the court concluded that Matzen's final account, as guardian, was properly credited with $3,750 representing the loss by reason of the stock, and $2,739.12 paid to discharge the statutory stockholder's liability for the double assessment thereon. From a provision to that effect, in the judgment which was entered, the guardian *ad litem* appealed.

On this appeal the guardian *ad litem* contends that under sec. 320.01, Stats. (relating to securities eligible for the investment of trust funds by guardians, executors, administrators, and trustees), it was Matzen's duty within a reasonable time after the assets of his ward came into his possession, to convert the bank stock into cash or securities of the classes specified in sec. 320.01, Stats.; that his failure to perform that duty is not excused by any probability of his ward's recovery of her mental competency and the control of her property, or any *ex parte* approval by the court of annual accounts which Matzen and his predecessor guardian had filed; and that by reason of his failure to convert the stock into securities eligible, under sec. 320.01, Stats., for the investment of trust funds, he was negligent, as a matter of law, and liable for the resulting loss. In support of those contentions the guardian *ad litem* relies upon the provisions in secs. 319.29 and 320.01, Stats., and the following decisions applying the latter, to wit: *Guardianship of Farness,* 225 Wis. 383, 273 N. W. 522; *Guardianship of Uggen,* 224 Wis. 24, 271 N. W. 326; *Estate of George,* 225 Wis. 251, 270 N. W. 538, 274 N. W. 294; *Estate of Grotenrath,* 217 Wis. 109, 258 N. W. 453; *Estate of Fouks,* 213 Wis. 550, 252 N. W. 160; *Estate of Dreier,* 204 Wis. 221, 235 N. W. 439; *Estate of Allis,* 191 Wis. 23, 209 N. W. 945, 210 N. W. 418; *Will of Leitsch,* 185 Wis 257, 201 N. W. 284.

On the other hand, the respondents, Matzen and his surety, contend that a guardian of an incompetent person is not required, as a matter of law, to sell all of his ward's personal property which is not eligible under sec. 320.01, Stats., for trust-fund investment. In that connection the respondents argue that the rights, powers, and duties of a guardian are not the same in all respects as those of a trustee; that the law recognizes that an incompetent ward may regain his competency; and that considerable hardship and injustice may result to a ward if all of his personal property were sold during a period of incompetency.

It is true that there are distinctions between the rights, powers, and duties of a guardian as compared to those of a trustee. As is stated in the Restatement, Trusts, p. 27, § 7,—

"A trustee has title to the trust property; a guardian of property does not have title to the property, but has only certain powers and duties to deal therewith for the benefit of the ward, the ward having title to the property. The beneficiary of a trust has an equitable interest in the subject matter of the trust; a ward has normally a legal interest. . . . The beneficiary of a trust may or may not be lacking in legal capacity; a guardian is appointed only when and for so long as the ward is lacking in legal capacity."

That is in accord with the statement in 32 C. J. p. 692, § 381,—

"The guardian or committee has no title to the property of his ward, either in trust or otherwise, the title remains in the ward. He is not the agent of his ward. He is the mere bailiff or curator of the ward's property; his possession is the possession of the court. At common law, his powers are merely such as are essential to the temporary preservation of the estate. The right to exercise any control over the property of the ward beyond this must be found in some legislative grant. At present the duties and powers of guardians or committees over the assets of their wards are generally fixed by statute, and they usually are limited to the powers thus conferred, or conferred by order of court."

In *Brovan v. Kyle,* 166 Wis. 347, 351, 165 N. W. 382, this court recognized that the legal, as well as the equitable title to the proceeds of a check belonging to a ward is in him and not in his guardian. But in none of the cases cited above, involving a guardian's duties in respect to converting of the ward's personal property into securities of the classes specified in sec. 320.01, Stats., is there any discussion as to any distinction in the applicability of that statute to a guardian in view of the differences between his rights, duties, and powers and those of trustees, executors, or administrators. Neither is there any discussion as to whether, or, if so, to what extent the provisions of sec. 319.29, Stats. (relating to the sale and investment by a guardian of a ward's property under a court order), may have any bearing in the application of sec. 320.01, Stats., to the holding or converting of personal property owned by the ward when the guardian was appointed. That question is squarely presented on this appeal, and the determination thereof necessitates taking both of those statutes into consideration and applying them with the distinctions between the rights, powers, and duties of guardians and those of trustees well in mind.

It is provided in sec. 320.01, Stats. 1937, that,—

"Executors, administrators, guardians and trustees may invest the funds of their trusts in accordance with the provisions pertaining to investments contained in the instrument under which they are acting, or in the absence of any such provision, then in the securities of the following classes: . . ." (See margin.[1])

On its face that provision is applicable alike to guardians, as well as trustees, executors, and administrators. No dis-

---

[1] Sec. 320.01, Stats. 1937, was first enacted in substance by ch. 317, Laws of 1903, and was numbered sec. 2100*b*, in the 1906 Suppl. That section was renumbered sec. 231.32 in the statutes of 1925, was repealed but re-enacted in substance by ch. 363, Laws of 1935, and numbered sec. 320.01, Stats. 1935.

tinction is made or recognized therein because of any differences in their respective rights, powers, or duties, or the time or manner in which their respective wards, beneficiaries, heirs, or legatees may become entitled to the possession and control of the trust property. As was said in *In re Allis' Estate,* 123 Wis. 223, 228, 101 N. W. 365,—

"We find no ambiguity in the phraseology of the act. The language and the provisions clearly show how investments of trust funds shall be made."

Accordingly, it was held in that and the other cases cited above, which related to the duties of trustees, that it was the duty of a trustee, in the absence of a provision to the contrary in the instrument under which he is acting, to sell the securities of the trust which are not eligible for trust-fund investment, under sec. 320.01, Stats., and invest the proceeds in securities eligible thereunder; and in *Guardianship of Farness, supra,* that rule was held applicable likewise to a guardian. However, at all times since the enactment of sec. 25, ch. 80, R. S. 1849, relating to the sale of personal property by a guardian, there have been provisions in substance like the provisions in sec. 319.29, Stats. 1937, that,—

"The court, on the application of a guardian or of any person interested in the estate of any ward, after such notice to all persons interested therein as the court shall direct, may authorize or require the guardian to sell any personal property held by him as guardian, and to invest the proceeds of such sale and any other moneys in his hands in real estate or in any other manner that shall be most for the interest of all concerned therein; and the court may make such further orders as the case may require for managing, investing and disposing of the personal property in the hands of the guardian." (See margin.[1])

---

[1] The provisions of sec. 319.29 first appear in substance in sec. 25, ch. 80, R. S. 1849. The statute was numbered sec. 3986, R. S. 1878; sec. 319.29, Stats. 1925; and sec. 319.29, Stats. 1933, in its present revised form.

In view of that statute, a guardian has neither the right nor the abstract duty to sell the personal property owned by his ward at the time of his appointment in order to convert the proceeds in securities eligible for trust-fund investment, under sec. 320.01, Stats. On the contrary, by reason of the provisions in sec. 319.29, Stats., it is evident that there shall be such a sale only when authorized or required by an order of the court, made upon an application by the guardian or any person interested in the ward's estate, after the giving of a required notice. Thus, in authorizing the sale of a ward's personal property by a guardian in the manner and under the conditions prescribed in sec. 319.29, Stats., it is consistent and in accord with the established status and limited powers of a guardian as a mere conservator of the ward's property without title thereto, while it is theoretically in the custody of the court. By virtue of that statute it has been the declared legislative policy since the enactment in substance of sec. 25, ch. 80, R. S. 1849, that a guardian may sell and is only authorized to sell such personal property as is mentioned therein, including corporate stock, if he is authorized or directed to do so by a court order made under sec. 319.29, Stats., on an application by him or any person interested in the estate of the ward, and due notice thereof to such persons as the court directs; that in the absence of such an order it is neither imperative for the guardian to sell the property, nor can he do so, or even be authorized to do so as a matter of course; and that his holding or retention of the property for the ward, does not constitute a violation of his duty or negligence, as a matter of law, unless and until after the sale thereof he has been authorized or directed by the court. Those conclusions are in accord with the decisions under statutes similar to sec. 319.29, Stats., in *Hendrix v. Richards,* 57 Neb. 794, 78 N. W. 378; *In re O'Brien's Estate,* 80 Neb. 125, 113 N. W. 1001; *Wilkins v. Deal,* 128 Neb. 78, 257 N. W. 486; *Coe v. Nebraska Bldg. & Inv. Co.* 110 Neb.

322, 193 N. W. 708; *Bohanan v. Riddle,* 145 Okla. 301, 293 Pac. 1031; *Bates v. Dunham,* 58 Iowa, 308, 12 N. W. 309; *McCutchen v. Roush,* 130 Iowa, 351, 115 N. W. 903. In so far as those conclusions are contrary to our conclusions in that respect in *Guardianship of Farness, supra,* that decision is hereby overruled. However, that does not affect the decision in *Guardianship of Uggen, supra,* in which the guardian, upon liquidating his ward's certificate of deposit in order to use part of the proceeds for necessary current expenses for the maintenance of the ward, reinvested the balance of the proceeds in new certificates of deposit. Although it was proper to liquidate the original certificate to obtain funds to pay the current expenses of the ward, it was the guardian's duty to invest that part of the proceeds for which there was no immediate need in order to maintain the ward, in only such securities as were eligible for trust-fund investment under sec. 320.01, Stats.

However, even though it was Matzen's duty, as guardian, to continue to hold the stock until he was authorized or required to sell it by an order of the court, it was his duty to exercise due care and diligence for the conservation of the estate, and he would be liable for any loss caused by his negligence in the performance of that duty. 28 C. J. p. 1129, § 213. But the evidence bearing on that issue warranted, as stated above, the court's findings that, Matzen throughout the performance of his duties as guardian exercised such diligence and prudence as an ordinarily prudent man exercises in his own affairs; that he was not guilty of any negligence or carelessness, either in law or in fact; and that he discharged his duties entirely in good faith and free from any bad faith. Although the court also stated in that connection that the accounts filed annually by Matzen's predecessor guardian in 1919 to 1923, inclusive, and by himself in 1924 to 1928, inclusive, continued to list the bank stock as an asset of the estate, and that on each of those accounts the county

judge annually signed the written indorsement "examined, approved and allowed to be entered of record," it clearly appears that the court did not consider those indorsements effective against the ward as binding adjudications approving the continued holding of the stock by the guardians. To so hold in relation to but an *ex parte* approval by the court would have been error. *Willis v. Fox,* 25 Wis. 646. Instead, the trial court found merely that by reason of those approvals Matzen was justified in believing until he filed his account for 1930 on February 12, 1931, that the county court and judge approved his continued holding of the stock as an asset of the trust, and that after that date there was no market for the sale thereof because of the then prevalent business depression. The fact that Matzen was so justified, as the trial court found, would not in itself have constituted a sufficient legal excuse to absolve him from liability if there had been an absolute duty on his part to convert the bank stock into securities eligible under sec. 320.01, Stats. But the facts that the continued holding of that stock had been annually reported by the guardian, and brought to the attention of the county judge, and that the judge had signed the approval indorsed on the guardian's annual accounts, were material matters that Matzen could rightly take into consideration in performing his duties and in exercising the care and diligence required of him as guardian. And likewise it was proper for the trial court to take those facts into consideration in determining whether Matzen had been guilty of negligence in continuing to hold the stock. It follows that the court's findings of fact must be sustained, and that the facts found warranted the conclusions of law and judgment entered thereon.

*By the Court.*—Judgment affirmed.