IN RE GUARDIANSHIP OF PERKINS: PERKINS, Guardian, Appellant, vs. PERKINS and another, Respondents.*

*October 24—November 26, 1946.*

---

* Motion for rehearing denied, with $25 costs, on January 22, 1947.

C. L. *Baldwin* and *Frank H. Grover,* both of La Crosse, for the appellant.

*LaVern G. Kostner* of Arcadia, for the respondents.

WICKHEM, J.    Mark E. Perkins is a disabled veteran of World War I.  He became the recipient of certain compensation and insurance benefits from the United States, and in 1923 Isadore Perkins was appointed his guardian.  During the early period of the guardianship the ward lived in various

veterans' hospitals and on the farm of the guardian in Trempealeau county. In the late '20's he moved to the village of Trempealeau, took some rooms and kept house for himself. In 1920 he expressed a desire to buy the house in which he presently resides, located about a quarter of a mile northwest of Trempealeau village. The house was then improved at a cost of some $1,800 and a total of $8,000 of guardianship funds were ultimately invested in this place, which is partially modernized. In 1937 the ward married. According to the guardian, the notion of moving to the village is that of the wife and not of the ward. Until March, 1946, the ward operated his car to and from the village, but he is afflicted with Parkinson's disease which involves an extreme tremor, and has incapacitated him from driving the car and from eating and dressing unaided. His mind is disturbed at times.

The contention of the ward and his wife is that the location of the present home is too far from church, stores, and other people; that the wife is not in good health, and that the convenience and comfort of both ward and herself would be served by moving into the village.

The house desired by the ward and his wife is sixty years old, was bought in 1920 for $2,500 and is for sale for $3,500. The guardian is of the view that the price is inflated, that the house is worth not more than $2,000, and that it is not convenient and will not promote the happiness of the ward. The guardianship has been very conservatively operated, and its value now is $17,234.99. This estate has been built up wholly by the excess of income over expenditures during the period of the guardianship.

At the time of his marriage there was a prenuptial agreement between the ward and his wife whereby, in the event she survived her husband, she was to have only homestead rights and the sum of $1,000. The guardian is a brother of the ward, and together with other brothers and sisters will, in default of a will, inherit the estate of the ward, except for the prenuptial provisions for her.

The guardian contends that the whole matter is within his discretion; that his judgment that the purchase of the home would not promote the happiness of the ward and his wife cannot be upset by the trial court merely because the latter is of a different opinion. He relies particularly upon *Guardianship of Bagley,* 203 Wis. 89, 233 N. W. 563, which holds that to justify interference with the control by guardian of the custody of his minor ward the former must have been guilty of positive misbehavior, want of integrity, or negligence affecting the ward's welfare; that in the absence of this, the court may not substitute its opinion as to the needs of the ward for that of the guardian, who, having a discretion, has the right, free and clear of control by the court, to resolve debatable questions as to the proper course of action.

The trial court concluded that sec. 296.12, Stats., empowered the court to order purchase in the name of the ward of any real estate in the state whenever it appears to the court that the acquisition will substantially improve the interests of the ward. So far as material, this section provides:

"The court or judge of the court in which the general guardian has been appointed is empowered to authorize the purchase in the name of such ward of any real estate within the state of Wisconsin when it shall be made to appear to such court or judge that such proposed purchase will substantially promote the interests of such ward, provided that no debt shall be incurred or assumed by such ward for purchase of any such real estate."

The guardian contends that under this section the court may act only upon the application of the guardian for authority to buy, and that upon such an application it must respect the guardian's discretion as above indicated.

At this point it is convenient to take notice of the provisions of sec. 319.10, Stats., which provides:

"The marriage of a ward shall terminate the right of the guardian to the custody and education of the ward. . . ."

This terminated the guardianship of Mark E. Perkins, so far as the latter's person was concerned, and thereafter the guardianship was solely of the ward's property.* In this connection, see *Roether v. Roether,* 180 Wis. 24, 26, 191 N. W. 576, where it is said:

"In our marriage laws there is no prohibition of marriage because a party may be under guardianship. Indeed, our statutes, sec. 3970, provide that when a female under guardianship marries, the authority of the guardian as to her custody and education ceases. At common law persons under guardianship could marry, and the general rule was that the marriage of a male ward terminated the guardianship of his person but not of his estate, while the marriage of a female ward to an adult person terminated the guardianship entirely."

In 1933, sec. 319.10, Stats., was so amended as to be applicable to wards, regardless of sex, and must be supposed to have codified the common law as stated in the *Roether Case, supra.* As a result, most of the discretion of the guardian disappeared and. the *Bagley Case, supra,* which involved the guardianship of the person of a ward, is inapplicable. The guardian's duty is providently to handle the funds of the guardianship. He is no longer in a position to exercise a discretion as to whether the ward will be more comfortable or happier or have his general interests served by living in town rather than on the edge of town. In the light of this, it is clear that the trial court has power to authorize on the application of the guardian, or to order on the application of the ward, the purchase of land if other conditions of the statute are satisfied, and if the expenditure is not so out of proportion to the ward's means as to endanger his estate. It was for the ward and his wife to determine what they wanted to do, and for the court to determine whether the matter could be so handled without improvidence. While it appears that the property will be bought at a somewhat inflated price, there is

no showing that the existing property of the ward cannot be sold upon the same index of value, and no abuse of discretion can be attributed to the trial court in this .respect. Furthermore, the excess is not a large sum. There is a larger monthly allowance to the ward than is used by the latter, and indeed, an estate of $17,000 has been built up solely by accumulated surplus. The ward should on this account alone have some claim to demand satisfactory conditions of living. So also should his wife, who has largely waived her interest in the ward's estate, and who has the whole burden of his physical care.

In view of the foregoing, we discover no want of power or error in the judgment appealed from.

*By the Court.*—Judgment affirmed.

The following opinion was filed January 22, 1947:

WICKHEM, J. (*on motion for rehearing*). It is urged that the court failed to take proper account of a portion of sec. 319.10, Stats., not quoted in the opinion. After providing that the marriage of a ward shall terminate the right of a guardian to the custody and education of the ward, and that the court may wholly discharge the guardian, require him to account to the court, and deliver to his ward all property in his hands or due from him, sec. 319.10 continues: "No order shall be made which is contrary to or inconsistent with the will under which such estate is held for or comes to *such minor.*" It is argued that the words "such minor" indicate that the application of the section is not to incompetent wards but simply to minor wards.

The point was not overlooked in the general opinion, but probably was not satisfactorily discussed. The operative words of the section are general and all-inclusive and such restraint as can be given to the section must find its source in two words in a comparatively minor proviso at the end of the section. The section is placed in a chapter applicable to mi-

nors and incompetents alike. The *Roether Case,* cited in the original opinion, involved an adult ward and the opinion treats sec. 3970, Stats., the forerunner of sec. 319.10, as applicable to adults. It appears clear to us that this construction is still properly applicable to the section, since its only amendment thereafter simply abolished any distinction between male and female wards in respect of the subject matter of the section.

*By the Court.*—Motion for rehearing is denied with $25 costs.