IN RE GUARDIANSHIP OF BOSE: KING, guardian of the person, Appellant, v. FIRST NATIONAL BANK OF KENOSHA, guardian of the estate, and TENNESSEN and another, coadministrators of estate of deceased ward, Respondents.

*No. 274.   Argued April 10, 1968.—Decided May 7, 1968.*
(Also reported in 158 N. W. 2d 337.)

84

For the appellant there was a brief and oral argument by *John V. Evans* of Kenosha.

For the respondent First National Bank of Kenosha there was a brief by *Heide, Sheldon, Hartley & Thom* and *Fred D. Hartley,* all of Kenosha, and oral argument by *Fred D. Hartley.*

For the respondents C. A. Tennessen and Joseph Bose, Jr., there was a brief by *Hammond & Tennessen,* attorneys, and *Leo E. Vaudreuil* of counsel, all of Kenosha, and oral argument by *Mr. Vaudreuil.*

ROBERT W. HANSEN, J. This appeal is brought to challenge the jurisdiction of a county court in a probate proceeding to order a guardian of the person to repay certain sums of money to the guardian of the estate and to return certain properties to the coadministrators. That issue is easily resolved. The Wisconsin legislature has given county courts in probate matters jurisdiction extending ". . . to all matters relating to the settlement of the estates of such deceased persons and of such minors and others under guardianship; . . ." [1] Clearly, the county court had the judicial authority to act with reference to the subject matter of appellant's guardianship.

A closer question in this case is whether the county court complied with the legislatively prescribed conditions for the exercise of such general authority. The legislature gave a general grant of authority, but prescribed how it is to be exercised. Given reason to believe that any guardian within its jurisdiction is guilty of waste or

[1] Sec. 253.10 (1), Stats. *See also* sec. 253.10 (2) (a) providing: "(2) (a) The county court shall have concurrent jurisdiction to hear, try and determine all matters and controversies which may arise between any personal representative, guardian or trustee appointed by such court . . . so far as such matter or controversy is incidental to and necessary for the complete administration of the estate, guardianship or trust . . . ."

mismanagement, the county court is to order the guardian to file his account.[2] However, this statute clearly provides that, if the court deems it necessary to proceed further, a time and place for adjustment and settlement of said account shall be fixed by the court and ". . . at least ten days' notice thereof shall be given to . . . all persons interested." [3]

Appellant was entitled to ten days' notice of the hearing at which she was ordered to appear. She was given six days' notice. This was not sufficient under the statutes involved. The probate court has only such jurisdiction as is conferred upon it by statute, and conditions precedent set forth in such statutes must be complied with to gain or exercise such jurisdiction.[4]

Even if we were to hold, as we do not, that there had been compliance with the ten-day notice requirement, there remains in this case a basic question as to the respective liabilities of a guardian of the estate and the guardian of the person in the situation here presented. At the close of the April 17th hearing, the court stated that the bank as guardian of the estate was excused "from any corresponding liability or malfeasance as guardian of the estate, they having paid these amounts over to the guardian of the person and upon her assurances that they were for the use and benefit of the ward." During the hearing this question was asked and answer given:

---

[2] Sec. 312.11, Stats.

[3] *Id. See also* sec. 324.19 providing: "If notice of any proceedings in county court is required by law or deemed necessary by the court and the manner of giving the same is not directed by law, the court shall order notice to be given in the manner prescribed by section 324.18" and sec. 324.18 (1) providing: "If notice is required by statute, it shall be given either by service thereof upon all persons interested (whether within or without the state) at least 10 days before the hearing or proceeding . . . ."

[4] *See Estate of George* (1937), 225 Wis. 251, 263, 264, 270 N. W. 538, 274 N. W. 294; *Will of Erpenbach* (1944), 245 Wis. 518, 522, 523, 15 N. W. 2d 795; and *Seyfert v. Seyfert* (1930), 201 Wis. 223, 228, 229, 229 N. W. 636.

"*Q.* But you depended pretty much on what she said to you as to whether or not this was justified? *A.* Yes."

The bank was entitled to rely upon the representations made by appellant in reaching its conclusion that the appellant's request for funds was necessary and proper, but this does not mean that the bank had no responsibility for expenditures thus made. Where the court appoints separate guardians for the estate and for the person, pursuant to sec. 319.03, Stats., each has certain duties and responsibilities. For the aged incompetent as for a minor child, the primary function of the guardian of the person is to provide for the care, comfort and maintenance of the ward.[5] It is the duty of the guardian of the estate to protect and preserve the estate,[6] to providently handle the funds of the guardianship,[7] and to preserve the ward's estate and expend or dispose of assets only to meet the fundamental needs of the ward or his dependents.[8]

Ordinarily, as is here the case, the guardian of the person will be someone recommended by the fact of kinship or special competence who is to provide the care and maintenance. Ordinarily, as is here the case, the guardian of the estate will be to a person or institution with special skill and competence in handling financial matters. Neither is to turn over his responsibilities to the other, as this court stated in an early case, on the subject of delegation of duties: " 'Trustees who take on themselves the management of property for the benefit of others have no right to shift their duty on other persons; and if they do so they remain subject to the responsibili-

---

[5] *See Guardianship of Bagley* (1930), 203 Wis. 89, 94, 233 N. W. 563; 25 Am. Jur., *Guardian and Ward*, p. 43, sec. 66.

[6] Sec. 319.19, Stats.

[7] *Guardianship of Perkins* (1946), 249 Wis. 486, 490, 24 N. W. 2d 897, 26 N. W. 2d 34.

[8] *Estate of Evans* (1965), 28 Wis. 2d 97, 99, 100, 135 N. W. 2d 832.

ty . . . they have undertaken. . . .' " [9] For guardians of the estate as for trustees generally, it can be said: "Especially is this true when the trustee is a company organized for the purpose of caring for trust estates, which holds itself out as possessing a special skill in the performance of the duties of a trustee, and which makes a charge for its services which adequately compensates it for a high degree of fidelity and ability in the administration of a trust estate." [10] In spelling out the duty of the guardian of the estate to ". . . exercise due care and diligence for the conservation of the estate, and . . . be liable for any loss caused by his negligence in the performance of that duty," [11] this court made the standard for performance ". . . such diligence and prudence as an ordinarily prudent man exercises in his own affairs; . . . not [to be] guilty of any negligence or carelessness, either in law or in fact . . . [discharging] his duties entirely in good faith and free from any bad faith." [12]

By this measuring stick the respective responsibilities that are in dispute are to be tested. The "prudent man rule" applies to both guardian of the person and guardian of the estate. However, as to expenditures made by the guardian of the person without court approval and without the specific authorization of the guardian of the estate, the guardian of the person is clearly liable. As to expenditures specifically authorized by the guardian of the estate, unless there has been either misrepresentation or misapplication of the expenditure authorized, the guardian of the estate is liable. If the guardian of the

[9] *Abrams v. United States Fidelity & Guaranty Co.* (1906), 127 Wis. 579, 584, 106 N. W. 1091. *See also* 1 Restatement, *Agency* 2d, pp. 87, 88, sec. 18, comment *c.*

[10] *Estate of Allis* (1926), 191 Wis. 23, 29, 209 N. W. 945, 210 N. W. 418.

[11] *Guardianship of Paulsen* (1938), 229 Wis. 262, 271, 282 N. W. 36.

[12] *Id.* at page 271.

person and the guardian of the estate agreed upon a certain expenditure, and such expenditure is later found by the court to have been improper, the guardian of the estate shall be liable as the impropriety occurred in the area of its special responsibility and expertise. While it is hindsight applied to this case, it is clear that wherever there is doubt as to the propriety of a particular expenditure, the safest course for both guardians is to secure court approval of the expenditure before it is made.

In the interest of justice under sec. 251.09, Stats., the order of the trial court is reversed and the cause remanded for a new hearing with ten days' notice to be given to all persons interested as statutorily required. This will give the appellant the opportunity to explain why she felt the $50 per month car allowance for driving her father in the country to be reasonable, why she believed it proper or necessary for her to accompany her eighty-seven-year-old father on the Florida trip, why she incurred expenditures for carpeting in the father's room, for an air-conditioning unit, for the canary and bird cage, etc. It will give the bank the opportunity to explain why it authorized such specific expenditures if it did, and to have available to it any defense of misrepresentation of facts at the time of the request or of misapplication of the money authorized for the particular expenditure. If, however, any specific expenditure is found to have been improper and if the bank specifically authorized such expenditure, and if the money was spent as authorized, the bank is liable.

*By the Court.*—Order reversed, and cause remanded for further proceedings not inconsistent with this decision.