IN the MATTER OF the GUARDIANSHIP OF F.E.H., Alleged Incompetent: V.D.H., Appellant-Petitioner,

v.

CIRCUIT COURT FOR OZAUKEE COUNTY, the Honorable Walter J. Swietlik, Presiding, Respondent.

Supreme Court

*Nos. 88-0867, 88-1307. Argued January 5, 1990.—Decided April 20, 1990.*

(Also reported in 453 N.W.2d 882.)

For the appellant-petitioner there were briefs by *John W. Strasburg,* Milwaukee and oral argument by *John W. Strasburg.*

For the respondent the cause was argued by *James H. McDermott,* assistant attorney general, with whom on the brief was *Donald J. Hanaway,* attorney general.

LOUIS J. CECI, J.   This case is before the court on petition for review of a decision of the court of appeals, *Matter of Guardianship of F.E.H.,* 149 Wis. 2d 237, 440 N.W.2d 799 (Ct. App. 1989). The court of appeals affirmed the decision and orders of the circuit court for Ozaukee County, Walter J. Swietlik, Circuit Judge, denying a petition of the co-guardians of the estate of F.E.H. to transfer his jointly held homestead to the sole ownership of his spouse and co-guardian, V.D.H. The issue before this court is whether the circuit court abused its discretion in denying the transfer. We hold that it did, and we reverse the decision of the court of appeals.

The facts of this case follow. F.E.H. suffers from Alzheimer's disease and was declared incompetent on January 29, 1987. His spouse, V.D.H., and his daughter, S.E.B., were named co-guardians of his estate. F.E.H. has been an inpatient resident at the Mequon Care Center since January, 1987. His cost of care is met through the medical assistance program of the Wiscon-

sin Department of Health and Social Services (DHSS), which is administered locally by the Ozaukee County Department of Social Services.

F.E.H. and his spouse, V.D.H., own a homestead in joint tenancy. In March of 1988, the co-guardians of the estate of F.E.H. filed a petition with the circuit court, pursuant to sec. 880.173, Stats., for authorization to transfer F.E.H.'s interest in the homestead to the sole ownership of V.D.H. The petition alleged that the transfer would be consistent with the provisions of F.E.H.'s will, which named V.D.H. as sole beneficiary, and would not affect F.E.H.'s eligibility for medical assistance.

The circuit court held a hearing on the petition on March 15, 1988. At the hearing, the income maintenance supervisor for the Ozaukee County Department of Social Services testified regarding the effect of the transfer on F.E.H.'s continued eligibility for medical assistance. The income maintenance supervisor stated that, under the statutes and regulations which govern the administration of the medical assistance program, the transfer of a homestead by an institutionalized person to his or her spouse, who continues to reside in the homestead, does not affect the institutionalized person's continued eligibility for medical assistance. She further stated that, under Wisconsin law, no lien attaches to a homestead for the repayment of benefits received through the medical assistance program. The income maintenance supervisor did note, however, that if the court were to deny the transfer and if V.D.H. were to predecease F.E.H., then the homestead would pass to the sole ownership of F.E.H. and would become subject to payment for his care and maintenance.

At the conclusion of the hearing, the court stated:

I think the court has a responsibility to consider the interests of the tax payer; and, . . . if [V.D.H.] were

to predecease her husband . . ., I would by signing the order in effect be precluding any recovery from his estate for his care.

. . . .
. . . I think that it's against public policy for the court to sign [such] an order . . ..

The circuit court denied the petition by decision and order entered March 23, 1988.

The co-guardians of the estate subsequently filed a motion for reconsideration of the decision and order denying the petition. The circuit court held a hearing on the motion on June 9, 1988. At the hearing, the court considered a letter from the Ozaukee county corporation counsel which indicated that the proposed transfer was legal and that it would not affect F.E.H.'s eligibility for medical assistance. The corporation counsel took no position as to whether the transfer was sound policy. The court again concluded that the transfer was against public policy, stating:

> The question that is of concern to the court is the public policy question. The only affect [sic] that the transfer would have, in the court's view, would be to retain the asset in the event that [V.D.H.] predeceased [F.E.H.] for the benefit of the children . . ..
>
> . . . .
> . . . [W]hen people work during their lifetime and acquire assets, . . . those assets should primarily be used for their care in the later years, and to expect the public to support the parents while the children take the assets without encumbrance is, in my view, contrary to public policy; and then for the court to put a stamp of approval on that, I think, is also contrary to public policy . . ..

The circuit court denied the motion for reconsideration by order entered June 14, 1988.

V.D.H. appealed from the decision and order of the circuit court denying the petition to transfer the homestead property and the order denying the motion for reconsideration.[1] V.D.H. argued that the circuit court had abused its discretion in refusing to approve the petition to transfer F.E.H.'s interest in the homestead property to the sole ownership of his spouse. The court of appeals stated that because there are no specific criteria for the circuit court to follow in deciding whether to approve a petition filed pursuant to sec. 880.173, Stats., that decision is completely discretionary with the circuit court. *Guardianship of F.E.H.,* 149 Wis. 2d at 240-41. The court of appeals held that the circuit court had not abused its discretion in this case because, in rendering its decision, the court examined the relevant facts, understood the applicable law, and articulated the reasoning for its denial of the transfer in a rational and logical manner. *Id.* at 241.

V.D.H. petitioned this court for review of the decision of the court of appeals, which we granted.

Section 880.173, Stats., authorizes the guardian of the estate of a married person to exercise property rights on behalf of the married person with the approval of the court. The circuit court is given discretion in deciding whether to approve or deny any proposed exercise of power by a guardian of the estate under sec. 880.173. The term "discretion" contemplates a process of reasoning that depends on facts that are of record or that are reasonably derived by inference from the record and a conclusion based on logic and founded upon proper legal standards. *McCleary v. State,* 49 Wis. 2d 263, 277, 182 N.W.2d 512 (1971).

---

[1] The appeals were consolidated in the court of appeals.

■ The issue before this court is whether the circuit court followed proper legal standards in denying a petition of the co-guardians of the estate of F.E.H. to transfer his interest in jointly held homestead property to his spouse pursuant to sec. 880.173, Stats. An abuse of discretion will be found where the circuit court has applied the wrong legal standard or has based its decision on impermissible or irrelevant factors. *Barstad v. Frazier,* 118 Wis. 2d 549, 554, 348 N.W.2d 479 (1984). As the legal standard applicable to the exercise of discretion under sec. 880.173 is not expressly set forth on the face of that statute, the necessary starting point for analysis of the issue presented in this case is the historical development of sec. 880.173 in relation to ch. 880, Stats.

■.

Under Wisconsin law, the guardian of the estate has the affirmative duty to manage the ward's estate in his or her best interests. *Guardianship of Nelson,* 21 Wis. 2d 24, 28, 123 N.W.2d 505 (1963). This duty requires the guardian to protect and preserve the estate, to providently handle and faithfully account for the funds of the guardianship, to perform all other duties required of him or her by law and, at the termination of the guardianship, to deliver the assets of the estate to the ward or to those legally entitled to them. Section 880.19(1), Stats. *See also Guardianship of Bose,* 39 Wis. 2d 80, 87, 158 N.W.2d 337 (1968). The guardian must perform these duties in good faith and with the due care and diligence which an ordinarily prudent person exercises in his or her own affairs. *Guardianship of Paulsen,* 229 Wis. 262, 271, 282 N.W. 36 (1938).

Traditionally, the guardian of the estate had limited powers with respect to the property of the ward. Upon approval of the court, the guardian could sell, mortgage,

pledge, lease, or exchange property of the estate for the purpose of paying the ward's debts, providing for the care, maintenance, and education of the ward or his or her dependents, investing the proceeds, or for any other purpose in the best interests of the ward. *See* sec. 880.19(5)(b), Stats. The guardian had no authority, however, to exercise any power over the ward's property which was not conferred by statute. Thus, the guardian of the estate could not make a gift of property of the estate on the ward's behalf or exercise on the ward's behalf those property rights denominated.as "personal" to the ward, such as the right to change the beneficiary on a life insurance contract, make an election on behalf of an incompetent widow, or terminate the joint ownership of a bank account or government bonds.[2]

The Wisconsin legislature expanded the statutory powers granted to a guardian of the estate of a married person by 1985 Wis. Act 37, secs. 182–84, which, effective January 1, 1986, amended[3] and renumbered sec. 880.173 and created sec. 880.173(2), Stats. Section 880.173 provides in part:

---

[2]*See Estate of Evans,* 28 Wis. 2d 97, 99–100, 135 N.W.2d 832 (1965); *Will of Barnes,* 4 Wis. 2d 22, 25–26, 89 N.W.2d 807 (1958); *Boehmer v. Boehmer,* 264 Wis. 15, 21–22, 58 N.W.2d 411 (1953); *Kay v. Erickson,* 209 Wis. 147, 152–53, 244 N.W. 625 (1932); *Van Steenwyck v. Washburn,* 59 Wis. 483, 504, 17 N.W. 289 (1884).

[3]Prior to the enactment of 1985 Wis. Act 37, sec. 880.173, Stats., provided:

> **Guardian or conservator for married person.** A guardian or conservator appointed under this chapter for a married person may consent to or join in any transaction with that person's spouse for which consent or joinder of both spouses is required under ch. 766.

**Guardian of the estate of a married person.**
**(1)** A guardian of the estate appointed under this chapter for a married person may exercise with the approval of the court, except as limited under s. 880.37, any management and control right over the marital property or property other than marital property and any right in the business affairs which the married person could exercise under ch. 766 [the Marital Property Act] if the person were not determined under s. 880.12 to be a proper subject for guardianship. Under this section, a guardian may consent to act together in or join in any transaction for which consent or joinder of both spouses is required or may execute a marital property agreement with the other spouse, but may not make, amend or revoke a will.

The powers granted to a guardian of the estate of a married person under sec. 880.173, Stats., supplement and broaden those powers otherwise provided for a guardian of the estate. in ch. 880, Stats. *See* sec. 880.173(2). Section 880.173 authorizes the guardian of the estate of a married ward to exercise, with the approval of the court, any management and control right over marital property or property other than marital property and any right in business affairs which the ward could exercise on his or her own behalf if not subject to guardianship, except the right to make, amend, or revoke a will. The Legislative Council Notes to 1985 Wis. Act 37, Wis. Stat. Ann. sec. 880.173 (West Supp. 1989), clarify the breadth of the authority provided to a guardian of the estate of a married person under sec. 880.173. The Legislative Council Notes state that the powers granted to a guardian of the estate under sec. 880.173 include, but are not limited to, the power to:

585

(1) make gifts . . . to likely beneficiaries of the married person's bounty; (2) convey or release contingent or expectant interests in property, including marital property rights and any right of survivorship incident to joint tenancy or survivorship marital property; (3) exercise or release powers held by the married person as trustee, personal representative, custodian for minors, conservator or donee of a power of appointment; (4) enter into contracts, including marital property agreements; (5) create, for the benefit of the married person or others, revocable or irrevocable trusts of marital property and other than marital property which may extend beyond the period of guardianship or the life of the married person; (6) exercise options of the married person to purchase or exchange securities or other property; (7) exercise the rights of the married person to elect benefits or payment options, to terminate, to change beneficiaries or ownership, to assign rights, to borrow or to receive cash value in return for a surrender of rights under life insurance [or annuity] policies, plans or benefits, mutual fund and other dividend investment plans, and deferred employment benefit plans; (8) exercise any right of the married person to an equitable election and elections in the deferred marital property and the augmented marital property of the married person's decedent spouse; (9) renounce or disclaim any interest by testate or intestate succession or by inter vivos transfer, including the right to surrender the right to revoke a revocable trust; (10) file joint or separate income tax returns; (11) pursue remedies under s. 766.70 if appropriate; and (12) minimize current or prospective taxes or expenses of administration of the guardianship estate or of the estate upon the married person's death.

586

The guardian of the estate of a married person may only exercise the powers granted under sec. 880.173, Stats., with approval of the court. The petitioner argues that sec. 880.173 and the Legislative Council Notes to 1985 Wis. Act 37 evidence the legislature's clear intent to grant to the guardian of the estate broad powers to manage and control the property of a married ward. The petitioner maintains that to carry out the legislature's clear intent, the circuit court's discretion to deny any proposed exercise of power by the guardian of the estate under sec. 880.173 must be strictly limited. It is the petitioner's position that the circuit court must allow the guardian of the estate of a married ward to exercise any power granted under sec. 880.173 so long as the exercise of that power, as it relates to the ward's property, is legal. We cannot agree that the legislature intended the circuit court's discretion under sec. 880.173 to be so limited.

The Legislative Council Notes to 1985 Wis. Act 37, Wis. Stat. Ann. sec. 880.173 (West Supp. 1989), clarify the history and purpose of sec. 880.173, Stats. The Legislative Council Notes state that sec. 880.173 is based upon Uniform Probate Code sec. 5–407 (1983) and Cal. Prob. Code sec. 2580 (West 1981). Those provisions codify the common law equitable doctrine of substituted judgment. *See* Law Revision Commission Comment to Cal. Prob. Code sec. 2580; *see also* Frolik, *Plenary Guardianship: An Analysis, A Critique and A Proposal For Reform,* 23 Ariz. L. Rev. 599 (1981); Rohan, *Caring for Persons Under a Disability: A Critique of the Role of the Conservator and the "Substitution of Judgment Doctrine,"* 52 St. John's L. Rev. 1 (1977). The doctrine of substituted judgment is based on the view that a court of equity has the inherent power to deal with the estate

of an incompetent in the same manner as the incompetent would if he or she were of full capacity.

Historically, the common-law doctrine of substituted judgment was used to transcend the strict statutory limitations placed on a guardian of the estate with respect to the management of property of the ward. In its most common application, the doctrine empowered the court to authorize a guardian to gift property of the estate, notwithstanding the absence of specific statutory authority, when the gift would both benefit the ward and carry out his or her probable actions if he or she were of full capacity. *See In re Guardianship of Christiansen,* 248 Cal. App. 2d 398, 56 Cal. Rptr. 505 (Dist. Ct. App. 1967); *see also In re Wemyss,* 20 Cal. App. 3d 877, 98 Cal. Rptr. 85 (Dist. Ct. App. 1971).

Uniform Probate Code sec. 5-407 and Cal. Prob. Code sec. 2580 codify the common-law doctrine of substituted judgment in expansive form. Those provisions authorize the court to exercise, or to approve the exercise of, virtually any property right which the ward could exercise on his or her own behalf if he or she were of full capacity. *See generally* Uniform Probate Code sec. 5-407(b)(3); Cal. Prob. Code sec. 2580(b). The statutes add flexibility to the guardianship arrangement by allowing the guardian of the estate to perform a broad variety of financial and estate planning functions on behalf of an incapacitated ward. Under either statute, the legal standard applicable to the exercise of power over the property of the ward is whether it will benefit the ward, his or her estate, or the members of his or her immediate family. *See* Uniform Probate Code sec. 5-407(b)(3) and Cal. Prob. Code sec. 2580(a).

On the basis of the foregoing, we conclude that, in amending sec. 880.173, Stats., to pattern the statute

588

after Uniform Probate Code sec. 5–407 and Cal. Prob. Code sec. 2580, the Wisconsin legislature intended to authorize the guardian of the estate of a married ward to exercise, with the approval of the court, any property right which the ward could exercise on his or her own behalf if he or she were of full capacity, except the power to make, amend, or revoke a will. We therefore hold that the legal standard which the circuit court is to apply in deciding whether to approve the exercise of power by the guardian of the estate under sec. 880.173 is whether the exercise of power will benefit the ward, his or her estate, or members of his or her immediate family.

Turning to the facts of the instant case, the circuit court refused to approve the transfer at issue in this case on the sole basis that the transfer would be against public policy because it would preclude the use of the homestead as an asset available to pay for the care of F.E.H. in the event that his spouse were to predecease him. The court stated:

> [W]hen people work during their lifetime and acquire assets, . . . those assets should primarily be used for their care in the later years, and to expect the public to support the parents while the children take the assets without encumbrance is, in my view, contrary to public policy; and then for the court to put a stamp of approval on that, I think, is also contrary to public policy, and that's the basis for my decision.

In reaching its decision, the circuit court failed to consider whether the proposed transfer of F.E.H.'s interest in jointly held homestead property to his spouse would benefit F.E.H., his estate, or members of his immediate family. Moreover, the circuit court's determination that public policy precludes the proposed transfer is erroneous. In fact, public policy as expressed in the

statutes and regulations dealing with the administration of the medical assistance program specifically endorses this type of transfer, regardless of its possible adverse effect on the availability of assets to pay for the care of an institutionalized ward.

Section 49.45(17)(d), Stats., deals with the divestment of homestead property by an applicant for or a recipient of medical assistance who resides as an inpatient in a skilled nursing facility, intermediate care facility, or inpatient psychiatric facility. Wisconsin Admin. Code sec. HSS 103.02, which implements sec. 49.45(17)(d), provides that when an institutionalized person has disposed of a homestead for less than fair market value during the two-year period preceding the date of his or her most recent application for medical assistance or of any review of eligibility for medical assistance, the difference between the fair market value of and the value received for the homestead is an asset to be considered in determining benefit eligibility. *See* Wis. Admin. Code secs. HSS 103.02(3)(b) and 103.02(2)(a). If the total value of the assets available to the institutionalized person exceeds the asset eligibility limitation for medical assistance, the applicant or recipient is ineligible for benefits until the excess over that limit has been expended for his or her care and maintenance. Wis. Admin. Code sec. HSS 103.02(3)(d)1.[4]

---

[4]Section 49.45(17), Stats., was repealed and recreated by sec. 1446 of 1989 Wis. Act 31. Section 3023(15)(b) of the Act directed the DHSS to promulgate rules to implement sec. 49.45(17). The changes in sec. 49.45(17) became effective on August 9, 1989, and brought Wisconsin policy on divestment into conformity with the Social Security Act as amended by the Medicare Catastrophic Coverage Act of 1988, Pub. L. 100-360, and the Family Support Act of 1988, Pub. L. 100-485.

Section 49.45(17), as recreated, establishes a period of benefit

However, Wis. Admin. Code sec. HSS 103.02(3)(d)3, which implements sec. 49.45(17)(e), Stats., provides that the transfer of homestead property by an institutionalized person for less than fair market value is not considered a divestment which bars eligibility for medical assistance benefits if:

> a. It is shown to the satisfaction of the department that the individual can reasonably be expected to be discharged from the medical institution and return to that homestead;
> b. *The title to the homestead was transferred to the individual's spouse* or child who is under age 21 or is blind or totally and permanently disabled . . .;
> c. It is shown to the satisfaction of the department that the individual intended to dispose of the homestead either at fair market value or for other valuable consideration; or
> d. It is determined by the department that the denial of eligibility would work undue hardship on the individual.

(Emphasis added.)[5]

---

ineligibility for an individual who is a recipient of medical assistance on the date of institutionalization or who is an applicant for medical assistance at any time after institutionalization and who has disposed of a resource for less than fair market value during the thirty-month period preceding the date of institutionalization or of application for benefits. The period of ineligibility begins on the date of divestment and continues for the lesser of thirty months or the number of months equal to the total uncompensated value of the transferred resource divided by the average monthly cost to a private patient of nursing facility services in this state.

[5]The state argues that the subsections of Wis. Admin. Code sec. HSS 103.02(3)(d)3 must be read conjunctively so that an institutionalized person who has disposed of a homestead for less

By virtue of sec. 49.45(17)(e), Stats., as implemented by Wis. Admin. Code sec. HSS 103.02(3)(d)3, the legislature has expressed the public policy of this state on the transfer at issue in this case. Under that policy, the transfer of the title to a homestead by an institutionalized person to his or her spouse is a protected transaction which does not affect the institutionalized person's continued eligibility for medical assistance. The legislature has thus decided that it is sound public policy to forego the possible use of a homestead as an asset available to pay for or to reimburse the state for the medical care and maintenance of an institutionalized person in favor of preserving the homestead for the institutionalized person's spouse.[6] When the legislature has clearly stated its policy in the form of a statute, that determination is binding on the courts. *Sinclair v. H&*

---

than fair market value may remain eligible for medical assistance only if the conditions set forth in subsections a, b, and c or those set forth in subsections a, b, and d are met. We reject the state's argument as contrary to established rules of statutory construction. When a statute contains a list of conditions, the "or" between the final subsections of the statutory list is to be read as a disjunctive. *See* Sutherland, Statutes and Statutory Construction, sec. 21.14 (4th ed. 1985). Further, sec. 49.45(17), Stats., as recreated by 1989 Wis. Act 31, and the emergency implementing rules which apply to divestments on or after August 9, 1989, clarify that the subsections of Wis. Admin. Code sec. HSS 103.02(3)(d)3 are to be read disjunctively. *See* Wis. Admin. Code sec. HSS 103.065(4) (effective August 9, 1989).

[6]Section 49.45(17), Stats., as recreated by 1989 Wis. Act 31, and the emergency administrative rules which apply to divestments on or after August 9, 1989, continue to exempt the transfer of a homestead by an institutionalized person to his or her spouse from the provisions on divestment.

*SS Department,* 77 Wis. 2d 322, 335, 253 N.W.2d 245 (1977).

Accordingly, we hold that the circuit court abused its discretion in failing to apply the legal standard applicable to the court approval requirement of sec. 880.173, Stats., and in basing its decision on the erroneous view that the transfer at issue in this case was contrary to public policy. There is no question that if F.E.H. were competent, he could legally transfer his interest in his homestead to the sole ownership of his spouse. We remand this case to the circuit court to consider the remaining question of whether the transfer would benefit F.E.H., his estate, or members of his immediate family. On remand, the co-guardians of the estate of F.E.H. have the burden to affirmatively show that the transfer is for the benefit of F.E.H., his estate, or members of his immediate family.

In the exercise of its discretion under sec. 880.173, Stats., the circuit court may properly consider such factors as the permanency of the ward's incapacity and the likelihood that the ward will need or benefit from the property in the future; the provisions of the ward's estate plan; the relationship and intimacy between the ward and the donee and whether the donee is a likely object of the ward's bounty; the personal traits and the past donative declarations of the ward; the condition of the estate and any adverse effect that the proposed action will have on the estate; the impact of the proposed action on the ward's eligibility for public assistance; and the likelihood that the ward, as a reasonably prudent person, would take the action contemplated if he or she had the capacity to do so. *See generally* Cal. Prob. Code sec. 2583.

*By the Court.*—The decision of the court of appeals is reversed, and the cause is remanded to the circuit

593

court for further proceedings consistent with this opinion.