BOEHMER, Respondent, vs. BOEHMER, Appellant.

*April 1—May 5, 1953.*

For the appellant there was a brief by *Coe & Coe* of Rice Lake, and oral argument by *Lawrence S. Coe.*

For the respondent there was a brief by *Gannon & Gannon* of Rice Lake, attorneys, and *Harold E. Stafford* of Chippewa Falls of counsel, and oral argument by *Mr. Patrick M. Gannon* and *Mr. Stafford.*

FRITZ, C. J.   As alleged in the pleadings and proven by the evidence on the trial, the following facts were established: The plaintiff Celestine Boehmer and Jacob Boehmer were married in 1939. Each had been married previously and had children by their prior marriage. At the time of the trial in 1952, plaintiff was sixty-six years of age, and Jacob Boehmer was eighty-one years of age. On June 14, 1948, they opened a joint savings account in the First National Bank of Rice Lake in the names of "Mr. Jacob and/or Mrs. Celestine Boehmer," and then rented in the names of plaintiff and her husband a safety-deposit box in said bank. With subsequent deposits and the accumulation of interest the total amount in that account was $6,426.80 on July 7, 1950. Prior to that date there had been no withdrawals. Both parties were present at the time the account was opened, and a

bankbook was issued to them in their names. The plaintiff was also present at the time of each subsequent deposit, and in April, 1950, she made two deposits without her husband knowing it. There is no evidence to prove whose money was used in making the original and subsequent deposits. The bankbook was kept in the safe at the home of the parties, and when said two deposits were made by plaintiff, she had the bankbook with her and afterward put it back in the safe. There was evidence that the deposits in that bank account were made for the benefit of plaintiff and her husband so that if he predeceased the plaintiff, the savings account would be plaintiff's without probate; and in the event she predeceased her husband, then the savings account would be his. Upon making the first deposit in the savings account, plaintiff was given possession of the savings-account book, and she has retained said book since the date of the first deposit.

In March of 1950, Jacob Boehmer suffered a stroke, and in July of that year, he was adjudged an incompetent, and his son, John P. Boehmer, was duly appointed as his guardian. As such guardian, he demanded that plaintiff give him the possession of said bankbook, but she refused to give the book to the defendant. Immediately thereafter, on the same day, the guardian John P. Boehmer went to said First National Bank and without any court order caused said savings account of $6,426.80 which was in the name of "Mr. Jacob and/or Mrs. Celestine Boehmer," to be transferred to another account in the name of "Jacob Boehmer, by John P. Boehmer, his guardian." Defendant, then, without the consent of the plaintiff, caused an inventory to be filed in the county court of Barron county, Wisconsin, in the matter of the estate of his father, and listed the $6,426.80 in said savings account, which he had transferred to himself as guardian, as an asset of the estate. Demand for the return of said savings account was duly made by plaintiff, but defendant refused and still refuses to return said money to the

joint account of the plaintiff and her husband, Jacob Boehmer.

After hearing the evidence, the court found:

"That the purpose of said deposit and the creating of said joint account was not for convenience in the withdrawal of funds but was for the purpose and intention of creating a joint account with the right of survivorship, so that either party might withdraw the entire funds in their lifetime, and upon the death of either one that the survivor would be the sole owner of the then balance in said account. That thereafter deposits were made in said savings account from time to time. . . .

"That after the defendant John P. Boehmer was appointed guardian as aforesaid, and on or about July 7, 1950, the defendant made demand upon the plaintiff for said passbook, which was refused, and on said day the defendant, although he did not have the savings bankbook went to the bank and demanded that the money on deposit be turned over to him, as guardian, and thereupon the said bank paid to the defendant all of the funds on deposit, with accumulated interest to that date aggregating the sum of $6,426.80. That the plaintiff, prior to the commencement of this action, made demand upon the defendant to restore said funds to said savings bank account but that the defendant has refused to do so."

And as conclusions of law, the court stated:

"That said bank account was a joint bank account with the right of survivorship with the right to either party to withdraw the entire funds in their lifetime, and upon the death of either one the survivor is entitled to the entire amount; and that the defendant as such guardian should be required to restore the funds so withdrawn to the said joint bank account with interest; that the withdrawal of said funds by the defendant was unauthorized, unwarranted, and unlawful."

Upon the findings of fact and conclusions of law, the court adjudged:

"That the defendant John P. Boehmer be and is hereby ordered to forthwith restore the joint savings account by de-

positing in said First National Bank of Rice Lake, said savings account of $6,426.80, with interest thereon at one per cent per annum from July 7, 1950; and that plaintiff Celestine Boehmer recover $121.04 as costs and disbursements."

Plaintiff contends that the joint savings bank account which was opened in July, 1948, by the plaintiff Celestine Boehmer and her husband, Jacob Boehmer, was a joint savings account, and that therefore—as the trial court found—each of said persons, the husband and likewise his wife, has the right of survivorship as an incident of their joint tenancy. In *Estate of Staver,* 218 Wis. 114, 260 N. W. 655, the court held that "delivery to a depositor, of certificates of deposit payable to the depositor and a third person jointly, creates legal ownership in both of such joint payees directly, and further transfer, such as delivery of the certificates by the depositor to such third person, is unnecessary to entitle the third person thereto by right of survivorship; subject only to a showing by clear and satisfactory evidence that would warrant affecting such survivor's legal title with a trust." (Syllabus.)

Appellant contends that in the absence of evidence other than the form of the deposit itself, no presumption of a joint tenancy arises, and that such deposit is only conclusive on the question of both parties having a right to withdraw the funds as long as both live and remain competent. That contention cannot be sustained. Sec. 221.45, Stats., specifically provides that a joint tenancy is created upon such facts as are presented in this case:

"When a deposit has been made or shall hereafter be made, in any bank, trust company bank, or mutual savings bank transacting business in this state in the names of two persons, payable to either, or payable to either or the survivor, such deposit, or any part thereof, or any interest or dividend thereon, may be paid to either of said persons whether the

other be living or not; and the receipt or acquittance of the person so paid shall be a valid and sufficient release and discharge to the bank for any payment so made."

In the *Staver Case, supra,* at page 124, the court construed that statute as giving the right of survivorship to either payee; and found, at least inferentially, that such a situation creates a joint tenancy.

Consequently, under authority of the *Staver Case, supra,* and sec. 221.45, Stats., it is our conclusion that when Jacob Boehmer opened an account in July, 1948, in his own name and that of his wife, in said First National Bank, a joint tenancy was created inuring to the benefit of both during their lives, with a right of survivorship enjoyed by either party upon the death of the other. It is appellant's contention that the form of the deposit was not only insufficient to warrant a finding of a joint tenancy, but that it is not necessary to decide on this appeal whether a right of survivorship exists; and that the appellant as guardian of the depositor Jacob Boehmer, who has now become incompetent, necessarily succeeds to the depositor's rights to withdraw an account which had been set up by him in his own name "and/or" his wife's name.

In answer to the first contention, namely, that a finding of a right of survivorship is immaterial to the proper disposition of this case, it suffices to state that in considering the prerogative to be exercised by a joint owner of a bank account to either allow the funds to accumulate and pass to the other joint owner upon his own death, or to exercise the right of withdrawal as to all or a part of the funds during his lifetime, the element of survivorship becomes of paramount importance. The right of withdrawal by a guardian, without any court order, in the absence of a survivorship feature, although it still might present a question of usurpation of guardianship powers, would not be attended by the more serious question, as in this case, where the right of

survivorship has been found to exist, of whether the right of withdrawal involved the exercise of a personal election that only Jacob Boehmer could have exercised himself before his incompetency.

Regarding appellant's contention that John P. Boehmer, as guardian, succeeded to the rights of Jacob Boehmer, as depositor, to withdraw an account which had been deposited in the names of said depositor "and/or" his wife, it must be realized that if Jacob Boehmer had not become incompetent, he could have elected to withdraw the account or allow it to remain until his death. In such a situation there is applicable the rule that where a ward has a personal privilege to elect between alternative or inconsistent rights or claims, the privilege of election does not pass to the guardian of the estate of the ward, and the guardian cannot make the election. In *Van Steenwyck v. Washburn,* 59 Wis. 483, 17 N. W. 289, this court held that a widow could not elect by choosing to take under the will or according to law because of her incompetency, and that such an election could not be made by her guardian, but that where application was made within a year after the death of the husband, the court would make such election. In *Kay v. Erickson,* 209 Wis. 147, 244 N. W. 625, it was held that a guardian could not change a beneficiary on a life insurance policy. Generally then, a guardian of the estate of the ward does not have legal title to the property of his ward, and has only certain powers and duties to deal therewith for the benefit of the ward. Many courts have described the fiduciary character of a guardian by stating that he is merely the conservator of the ward's property and his powers are only such as are essential to the temporary preservation of the estate.

In the case at bar, in view of the fact that Jacob Boehmer could have elected to withdraw the funds or allow them to remain intact as long as he lived or remained competent, there was involved a choice by which one of two alternative

rights or claims is accepted and the other rejected. Under authority of *Van Steenwyck v. Washburn, supra,* and *Kay v. Erickson, supra,* we, therefore, conclude that this was a personal right which could not be exercised by the guardian, and that it is up to the court to determine what, if anything, is necessary for the best interests of the incompetent; and if any funds are necessary for his support, then the court may order such withdrawal therefrom.

In view of our finding, however, of a joint tenancy, with a corresponding right of survivorship, and the legal incapacity of the guardian to exercise any personal election over the account, we deem it necessary as an added safeguard to condition all withdrawals by either plaintiff or the guardian, and make such withdrawals subject to the approval of the court. The trial court's judgment ordered that the money withdrawn from the joint savings account be restored by the guardian in the joint names of the plaintiff and her husband, the incompetent. We approve of such result, but we do not think that it goes far enough. The moneys in said account should be considered to be in *custodia legis* of the county court with no right either in the plaintiff wife or the guardian to make any withdrawals, except as stated above, upon court order.

*By the Court.*—It is ordered and adjudged that the defendant, John P. Boehmer, forthwith restore to said First National Bank of Rice Lake the sum of $6,426.80 heretofore deposited in a joint savings account in the names of "Mr. Jacob and/or Mrs. Celestine Boehmer" with interest on said deposit from July 7, 1950, at the rate of one per cent per annum, and that the plaintiff recover her costs to be paid by defendant in the sum of $100; and disbursements taxed at $21.04.

It is further ordered and adjudged that neither the plaintiff nor the defendant guardian shall withdraw any moneys from the aforesaid joint savings account when so restored, except

upon an order of the county court of Barron county authorizing such withdrawal.

It is further ordered and adjudged that a certified copy of the judgment be delivered to the First National Bank of Rice Lake.

As so modified, the judgment is affirmed.