Daryl PLUSKOTA, Petitioner-Respondent,

v.

ROADRUNNER FREIGHT SYSTEMS, INC., Respondent-Appellant,

DEPARTMENT OF INDUSTRY, LABOR & HUMAN RELATIONS, Respondent-Co-Appellant.†

Court of Appeals

*No. 93–0455. Submitted on briefs December 15, 1993.—Decided October 11, 1994.*

(Also reported in 524 N.W.2d 904.)

†Petition to review denied.

For the respondent-appellant the cause was submitted on the briefs of *Michael, Best & Friedrich*, with *Scott C. Beightol* and *Linda L. Hale*, of Milwaukee.

For the respondent co-appellant the cause was submitted on the briefs of *James E. Doyle*, attorney general, and *David C. Rice*, assistant attorney general.

For the petitioner-respondent the cause was submitted on the briefs of *Perry, Lerner & Quindel, S.C.*, with *Peter Guyon Earle*, of Milwaukee.

■■■■■■■■■■■

■■■■■■■■■■■

Amicus Curiae brief was filed by *Alan J. Thiemann* of *Taylor Thiemann & Aitken* of Alexandria, Virginia, *David W. Arnold* of *Reid Psychological Systems* of Chicago, Illinois, and *William E. McCardell* and *Paul G. Kent* of *DeWitt, Porter, Huggett, Schumacher & Morgan, S.C.* of Madison, Wisconsin, for The Association of Test Publishers.

Before Wedemeyer, P.J., Sullivan and Schudson, JJ.

SCHUDSON, J.   This case considers whether written employee honesty tests, which do not measure physiological responses, are "unfair honesty tests" regulated by the Wisconsin Fair Employment Act (WFEA). *See* §§ 111.31-111.395, STATS. (1989-1990). Roadrunner Freight Systems, Inc., and the Wisconsin Department of Industry, Labor and Human Relations (DILHR) appeal from the trial court decision reversing DILHR's determination that such tests are not "unfair honesty tests" regulated by the WFEA. We conclude that DILHR's decision was correct and, therefore, we reverse the trial court.

Daryl Pluskota filed a complaint with the Equal Rights Division of DILHR alleging that his employer, Roadrunner Freight Systems, Inc., had forced him to take an unfair honesty test under threat of termination, in violation of the WFEA. The facts relevant to the resolution of this appeal are not in dispute. The trial court found:

> On January 28, 1990 stereo equipment was stolen from the dock area of Roadrunner's warehouse. On January 31, 1990 all dock area workers, city drivers, dock supervisors and traffic department employees were asked to take the Compu-Screen

Risk Analysis Interview (hereinafter Compu-Screen II). Under threat of termination Pluskota, an employee since March of 1988, refused to take the test and was suspended the following day. Pluskota returned to work on February 5, 1990 intending to comply with Roadrunner's demand. After Roadrunner Vice-President Peter O'Malley assured him that taking the test was a requirement of his job and not a reflection of the quality of his work, and that the company in fact liked his work, Pluskota took the Compu-Screen II. This test consisted of 107 tape-recorded questions played through headphones. Pluskota was given a standardized answer sheet and instructed to fill in the small ovals that corresponded with his answers. He had four seconds in which to answer each question. When completed, the test was scored by Compu-Screen Systems, Inc. via telephone. The results were interpreted with reference to preset cutoff points and purport to determine whether Pluskota presented a high risk in any of the 13 categories tested (i.e., personal theft, drug use, employee attitude, management misconduct, etc.. . .). Pluskota's test results were not part of the record, but Roadrunner has admitted that they were "unremarkable" and that by the time they were received the police had concluded that the theft was not the work of insiders.

On March 7, 1990 Pluskota was terminated by Roadrunner on the basis of his "past performance". Pluskota rejects these grounds as pretextual and asserts instead that he was fired solely because of the Compu-Screen II.

Pluskota argued that the written Compu-Screen II test violated § 111.37(1)(a), STATS. (1989-90), of WFEA, which provided that "no employer . . . may directly or indirectly solicit, require or administer a polygraph,

voice stress analysis, psychological stress evaluator *or any other similar test* purporting to test the honesty of any employe or prospective employe."[1] (Emphasis added.) The appellants, however, argued that § 111.37(1)(a)'s prohibition against "any other similar test" did not apply to the written Compu-Screen II test.

The Equal Rights Division (ERD) investigator issued a preliminary determination and order dismissing Pluskota's complaint on the grounds that DILHR lacked jurisdiction because the Compu-Screen II was not an unfair honesty test under the WFEA. The case was then reviewed by an ERD administrator, who also ruled that dismissal of Pluskota's complaint was appropriate because "the Division has not been given jurisdiction . . . to regulate employment tests which do not measure physiological changes in individuals." Pluskota appealed and the trial court reversed, concluding that all tests purporting to measure the honesty of an individual were regulated by the statute. The trial court reasoned:

> The Legislature did not single out honesty tests that measure physiological responses for prohibition, but rather enumerated those tests known to it to be unreliable. These tests were prohibited because they frequently misclassified employees as dishonest or at "high risk" and thereby obviated the

---

[1] In 1991, the legislature amended § 111.37, Stats. *See* 1991 Wis. Act 289 (effective May 14, 1992). The current revised statute is substantially similar to the Federal Employee Polygraph Protection Act of 1988, 29 U.S.C. §§ 2001-2009. The federal act does not regulate the use of paper and pencil surveys such as the Compu-Screen II used in this case. 29 C.F.R. § 801.2(d)(2). Since the alleged act of unfair honesty testing in this case occurred prior to the effective date of the amendment, the unamended version of the WFEA applies.

statute's purpose of "fostering to the fullest extent practicable the employment of all properly qualified individuals." 111.31(3). Consequently, while *ejusdem generis* is certainly applicable in this case, the type to which the enumerated tests belong is not those tests which measure physiological responses but rather those tests which are unreliable and result in misclassification of employees.

Not only does the Legislature's stated purpose require this Court to interpret sec. 111.37(1)(a) as prohibiting all unreliable honesty tests, it requires us to expressly reject the Respondents' interpretation. For if theirs is the correct interpretation, it would allow for at least two unbearable results. First, it would allow employers to administer patently unfair honesty tests provided they did not measure physiological responses. Second, it would prohibit employers from administering any newly developed fair and accurate honesty test merely because it measured physiological responses. Given their stated goals, the Legislature could not have intended this result.

On appeal, there is no dispute that the Compu-Screen II is a paper and pencil test designed to measure a person's honesty, but which attempts to do so without measuring physiological changes in the test subject. The question, therefore, is a jurisdictional one: is the Compu-Screen II an "unfair honesty test" subject to regulation under the WFEA? The answer requires the interpretation of the WFEA, as it was written in 1990.

Statutory construction presents a question of law subject to our *de novo* review. *State ex rel. Newspapers, Inc. v. Showers*, 135 Wis. 2d 77, 85, 398 N.W.2d 154, 158 (1987). The appellants interpret "any other similar test" to mean that the test must measure physiological

changes in the individual in order to be an "unfair honesty test" under the WFEA. Pluskota, however, contends that any test designed to measure honesty may be an "unfair honesty test" under the WFEA. Both interpretations are arguably reasonable based on the plain language of the statute. Given such ambiguity, we resort to rules of statutory construction and to legislative history to ascertain the statute's correct meaning. *Nick v. Toyota Motor Sales*, 160 Wis. 2d 373, 380, 466 N.W.2d 215, 218 (Ct. App. 1991). Further, this court accords "due weight" to an administrative agency's legal conclusions based on its "experience, technical competence, and specialized knowledge." *See* § 227.57(10), STATS.; *Sauk County v. WERC*, 165 Wis. 2d 406, 413-414, 477 N.W.2d 267, 270 (1991).[2]

---

[2] The parties argue whether the agency's determination in this case should be afforded great weight, due weight, or no weight. *See Sauk County v. WERC*, 165 Wis. 2d 406, 413-414, 477 N.W.2d 267, 270-271 (1991). In this case, our conclusion would remain the same under each of the three standards. We note, however, that the "due weight" standard applies here because the determination is " 'very nearly' one of first impression," *see id.*, 165 Wis. 2d at 413-414, 477 N.W.2d at 270, but also is one that relates to areas of the agency's special experience and expertise. Although LIRC and ERD have considered a number of cases involving the subject matter of this appeal, *see Nystrom v. Holiday Cos. / Food-4-Less*, ERD No. 8902732 (LIRC July 25, 1991); *Hofmaier v. Mills Fleet Farm*, ERD No. 9011504 (LIRC June 13, 1991); *Hintz v. Fleet Farm*, ERD Case No. 8912545 (LIRC May 22, 1991); *Saler v. Spencer Gifts, Inc.*, ERD Case No. 8451454 (LIRC September 30, 1988); *England v. Seifert's Pine Tree Mall*, ERD No. 8205634 (March 29, 1983 ERD order of dismissal); *Blumenthal v. Kay-Bee Toy & Hobby Shops, Inc.*, ERD No. 8205303 (January 20, 1983 ERD order of dismissal), no published appellate decisions in Wisconsin have addressed this issue.

The appellants argue that a paper and pencil test like the Compu-Screen II is not regulated by the WFEA. They maintain that the statute's specific reference to "polygraph, voice stress analysis, psychological stress evaluator or any other similar test" specifically encompasses tests that measure physiological changes in the subject as the test is being administered. They contend, therefore, that other kinds of tests or evaluations in the form of surveys, interviews, and paper and pencil personality forms are qualitatively different because they do not measure physiological changes and, therefore, are not regulated by the statute. The appellants are correct.

The rule of statutory construction, *ejusdem generis*, provides that where a general term is preceded by a series of specific terms, the general term is construed "as being limited to an item of the same type or nature as those specifically enumerated." *Hatheway v. Gannett Satellite Info. Network, Inc.*, 157 Wis. 2d 395, 400, 459 N.W.2d 873, 876 (Ct. App. 1990). Thus, the statute's reference to "any similar test" was limited to tests similar to "a polygraph, voice stress analysis, [and] psychological stress evaluator," which measure physiological responses. Any doubt about the statute's scope is erased by the statute's legislative history.

The original version of 1979 Assembly Bill 139, which created § 111.326, STATS. (1979-80), (§ 111.37's predecessor), regulated "the polygraph, voice stress analysis, psychological stress evaluator, and any other test purporting to test the honesty of any employee or prospective employee." Dr. Philip Ash, an expert in the field of honesty testing, and Charles Marino, general counsel for Reid Psychological Systems, testified before the Judiciary Committee on the scope of tests regu-

295

lated by 1979 Assembly Bill 139. They testified that paper and pencil surveys were widely used by employers and should not be prohibited. They warned that the original version of 1979 Assembly Bill 139 could be construed to include all tests or interviews that included assessments of honesty, and suggested that the word "similar" be inserted between the words "other" and "test" to clarify that the statute should be applied only to tests which measure physiological changes such as the polygraph, voice stress analysis and psychological stress evaluator. The Legislature amended the Bill and added the word "similar" in §§ 111.326, 905.065, and 942.06, STATS. *See* Assembly Substitute Amendment 2 to 1979 Assembly Bill 139 (Feb. 14, 1980); Assembly Amendment 12 to Assembly Substitute Amendment 2 to 1979 Assembly Bill 139 (Feb. 14, 1980); Assembly Journal, Eighty-Fourth Regular Session, February 14, 1980, at 2233 (showing motion carried on Amendment 12). Additionally, 1979 Assembly Bill 139's legislative history also includes the fiscal estimate, which states that "[t]his bill restricts the use of polygraph and other similar 'lie detector' tests."

Although this issue is one of first impression in Wisconsin, we note that the Minnesota Supreme Court has confronted a comparable one. In *State of Minnesota by Spannaus v. Century Camera, Inc.*, 309 N.W.2d 735 (Minn. 1981), interpreting the very Minnesota law on which the Wisconsin statute was modeled,[3] the Minnesota Supreme Court concluded that a written honesty test was not a prohibited "unfair honesty test." *Id.* at 745. Significantly, the Minnesota statute did not even include the word, "similar," added in the Wiscon-

---

[3] *See* Drafter's Note, dated December 7, 1978, by Senior Legislative Attorney Bruce Feustel.

sin statute.[4] The Minnesota Supreme Court concluded that the statute regulated testing methods "limited to those tests and procedures which similarly [to the polygraph and the voice stress analysis] purport to measure physiological changes in the subject tested. Thus, we exclude from the current prohibitions of [the Minnesota statute] written psychological questionnaires . . . ." *Id.*[5]

■

We acknowledge the trial court's thoughtful comments about the potential dangers posed by nonphysiological honesty tests that may be unreliable. Certainly the legislature could respond to such concerns by extending the reach of the WFEA. We conclude, however, that, based on the principle of *ejusdem generis*, and on the statute's legislative history, a paper and pencil test such as the Compu-Screen II was not regulated by the WFEA because it did not measure physiological responses of the subject during the test and, therefore, it was not "similar" to those regulated under the WFEA. Accordingly, we reverse the trial court decision.

*By the Court.*—Judgment reversed.

■■■■■■

[4] Section 181.75, subd. 1 (1980) of the Minnesota statutes in effect when *State of Minnesota by Spannaus v. Century Camera, Inc.*, 309 N.W.2d 735 (Minn. 1981), was decided, in part, stated that "[n]o employer or agent thereof shall directly or indirectly solicit or require a polygraph, voice stress analysis, or any test purporting to test the honesty of any employee or prospective employee."

[5] LIRC has applied *Century Camera* in *Hintz v. Fleet Farm*, ERD Case No. 8912545 (LIRC May 22, 1991), in which LIRC held that a paper and pencil test was not prohibited by WFEA.