IN the MATTER OF the GUARDIANSHIP OF STANLEY B. :

MICHAEL S. B., Guardian of the Estate of Stanley B.,
Appellant,

v.

Frederic J. BERNS, Guardian Ad Litem, Respondent.

Court of Appeals

*No. 95–0580. Submitted on briefs August 7, 1995.—Decided
September 19, 1995.*

(Also reported in 540 N.W.2d 11.)

921

On behalf of the appellant, the cause was submitted on the briefs of *Joseph J. Skemp, Jr.* of *Moen, Sheehan, Meyer, Ltd.* of La Crosse.

On behalf of the respondent, the cause was submitted on the brief of *Frederic J. Berns* of *Frederic J. Berns, S.C.* of Whitehall.

Before Cane, P.J., LaRocque and Myse, JJ.

CANE, P.J. Michael B., guardian of the estate of Stanley B., appeals an order denying his request for court authorization permitting him to make gifts from Stanley's guardianship estate in $10,000 increments. Michael also appeals an order denying his motion to reconsider the same issue. Because we agree with the circuit court that no statutory authority gives Michael the power to make gifts from the guardianship estate for the purpose of avoiding estate taxes and because we refuse to invoke the common law doctrine of substituted judgment to give Michael such authority, we affirm the circuit court's orders.

The facts are undisputed. On May 3, 1994, the circuit court found that Stanley was in need of a permanent guardian and protective placement because Stanley, a seventy-nine-year-old widower, was suffering from infirmities of aging and was unable to care for himself. Michael, Stanley's son, was appointed guardian of Stanley's person and guardianship estate.

On October 28, 1994, Michael filed a guardianship inventory of his father's guardianship estate estimating the net value of Stanley's property to be $817,254.91. On November 10, 1994, Michael filed a motion asking for authorization to gift funds from Stanley's guardianship estate in $10,000 increments for the purpose of distributing wealth before death, thereby avoiding estate taxes upon Stanley's death.[1]

---

[1] A tax is imposed on the transfer of the taxable estate of every decedent who is a United States citizen. I.R.C. § 2001(a). A credit of $192,800 is allowed to the estate of every decedent against the tax imposed by § 2001. *Id.* at 2010. For an estate worth $600,000 or less, this credit covers the entire estate tax imposed by § 2001. *Id.* at § 2001(c). Thus, many prudent estate planners advise reducing the taxable estate before death to $600,000 or less. One way to do this without paying a gift tax is

The circuit court heard testimony on the motion and held that § 880.19, STATS., does not authorize the guardian to make gifts from the ward's estate for the purpose of minimizing estate taxes. The circuit court also rejected Michael's argument that the court should adopt the doctrine of substituted judgment, a doctrine other state courts have invoked to authorize guardians to make gifts designed to effectuate prudent estate planning. Because the circuit court found there was no statutory or common law authority that would allow it to authorize the gifts, it denied Michael's motion without specifically finding whether the gifts would be in Stanley's best interest.[2]

Michael moved for reconsideration of the circuit court's order. The circuit court again denied Michael's motion. Michael now appeals, contending that § 880.19, STATS., is broad enough to encompass the authorization he seeks. Michael also argues that this court should adopt the common law doctrine of substituted judgment and thereby allow the court to substitute its judgment for that of Stanley. We reject these arguments and affirm the circuit court's orders denying Michael's motion for authorization to dis-

---

to give gifts of up to $10,000 to individual persons each year, because gifts up to $10,000 per person per year are not included as taxable gifts. *Id.* at § 2503(b). In this case, Michael is seeking authorization to give gifts to Stanley's seven living relatives (including Stanley's children's spouses) and thereby reduce the taxable estate by $70,000 each year. No family member has objected to this plan.

[2] The circuit court did imply that even if it had the authority to authorize Michael's request, it may have declined to do so because the record suggested Stanley seldom made large gifts to relatives during his lifetime, choosing instead to give approximately $100 on birthdays and at Christmas.

tribute gifts from the guardianship estate for the purpose of avoiding estate taxes.

## STATUTORY AUTHORITY UNDER § 880.19, STATS.

Section 880.19, STATS., defines the duties and powers with which guardians manage their wards' estates. Michael argues that subsections (1), (4) and (5)[3] sug-

---

[3] Section 880.19, STATS., provides:

(1) GENERAL DUTIES. The guardian of the estate shall take possession of all of the ward's real and personal property, and of rents, income, issues and benefits therefrom, whether accruing before or after the guardian's appointment, and of the proceeds arising from the sale, mortgage, lease or exchange thereof. Subject to such possession the title of all such estate and to the increment and proceeds thereof shall be in the ward and not in the guardian. It is the duty of the guardian of the estate to protect and preserve it, to retain, sell and invest it as hereinafter provided, to account for it faithfully, to perform all other duties required of the guardian by law and at the termination of the guardianship to deliver the assets of the ward to the persons entitled thereto.

. . . .
(4) INVESTMENTS. (a) The guardian of the estate may, without approval of the court, invest and reinvest the proceeds of sale of any guardianship assets and any other moneys in the guardian's possession in accordance with ch. 881.

(b) The guardian of the estate may, with the approval of the court, after such notice as the court directs, invest the proceeds of sale of any guardianship assets and any other moneys in the guardian's possession in such real or personal property as the court determines to be in the best interests of the guardianship estate, without regard to ch. 881.

(c) No guardian shall lend guardianship funds to himself or herself.

(5) SALES AND OTHER DISPOSITIONS. (a) The guardian of the estate may, without approval of the court, sell any property of the guardianship estate acquired by the guardian pursuant to sub. (4).

(b) The court, on the application of the guardian of the estate or of any other person interested in the estate of any ward, after such notice if any, as the court directs, may authorize or require the guardian to sell, mortgage, pledge, lease or exchange any property of the guardianship estate upon such terms as the court may order,

gest a guardian has the authority to distribute gifts from the ward's estate. For example, the statute authorizes the guardian to protect, preserve, retain, sell and invest the guardianship estate. Section 880.19(1), STATS. Michael argues that this broad language "contemplates that there are situations for which no provision is made in the statutory scheme to which the court may exercise its discretion and permit such other actions by the guardian which purpose is in the best interests of the ward (and his estate)."

Whether Michael's assertions are correct depends on this court's interpretation of § 880.19, STATS. Statutory interpretation presents a question of law that we review de novo. *State ex rel. Frederick v. McCaughtry*, 173 Wis. 2d 222, 225, 496 N.W.2d 177, 179 (Ct. App. 1992). The purpose of statutory construction is to ascertain and give effect to the legislative intent. *State v. Martin*, 162 Wis. 2d 883, 893, 470 N.W.2d 900, 904 (1991). In determining legislative intent, first resort must be given to the statutory language itself. *Id.* at 893-94, 470 N.W.2d at 904. If the statute's meaning is clear and unambiguous on its face, resort to extrinsic aids for the purpose of statutory construction is improper. *Id.* A statute is ambiguous when it is capable of being understood by reasonably well-informed per-

---

for the purpose of paying the ward's debts, providing for the ward's care, maintenance and education and the care, maintenance and education of the ward's dependents, investing the proceeds or for any other purpose which is in the best interest of the ward.

 (c) No guardian shall purchase property of the ward, unless sold at public sale with the approval of the court, and then only if the guardian is a spouse, parent, child, brother or sister of the ward or is a cotenant with the ward in the property.

 (d) The provisions of this subsection insofar as they apply to real estate shall be subject to ch. 786.

sons in two or more different senses. *Id.* at 894, 470 N.W.2d at 904.

We begin with our examination of the statute's language. While § 880.19, STATS., uses broad language to describe each guardian's powers and duties, this language grants the guardian power to realize a single objective: to preserve the guardianship estate so that upon termination of the guardianship, the guardian can deliver the ward's assets to the persons entitled to it. Section 880.19(1), STATS. To accomplish this objective, the guardian may invest the proceeds of any sale of guardianship assets and any other moneys in such real or personal property as the court determines to be in the best interests of the guardianship estate. Section 880.19(4)(b), STATS. Additionally, the guardian may sell or exchange any property of the guardianship estate "for the purpose of paying the ward's debts, providing for the ward's care, maintenance and education and the care, maintenance and education of the ward's dependents, investing the proceeds or for any other purpose which is in the best interest of the ward." Section 880.19(5)(b), STATS.

Our examination of § 880.19(1) and (4), STATS., reveals no language indicating that the guardian may distribute assets from the guardianship estate for the purpose of avoiding estate taxes. While a guardian may sell, invest and reinvest proceeds, the assets in their various forms remain with the guardianship estate. We conclude that § 880.19(1) and (4) are unambiguous and therefore, this court must give the language its ordinary meaning. *Frederick*, 173 Wis. 2d at 225-26, 496 N.W.2d at 179.

929

Michael asserts that the ordinary meaning of the word "preserve" in § 880.19(1), STATS., includes distributing guardianship estate assets to avoid estate taxes that will be imposed on Stanley's estate at death. We disagree. The word "preserve" is inherently inconsistent with the permanent reduction of guardianship estate assets through distribution. Our supreme court reached the same conclusion when it examined an earlier version of § 880.19 in *In re Evans' Estate*, 28 Wis. 2d 97, 135 N.W.2d 832 (1965).[4] In *Evans' Estate*, the court examined whether the law governing guardianships also controlled conservatorships. *Evans' Estate*, 28 Wis. 2d at 99, 135 N.W.2d at 833. In doing so, the court stated:

> Sec. 319.19, Stats., which lists the powers and duties of a guardian, contains no express provision which permits a guardian to make a gift, either outright or in joint tenancy, on behalf of the ward . . . . The primary function of the guardian is to preserve the ward's estate and assets are to be expended or disposed of only to meet the fundamental needs of the ward or his dependents . . . . [T]he trial court was correct in concluding that a guardian, even with court approval, could not create a joint tenancy in certain assets of the ward when such transfer was not for the care, maintenance, or education of the ward.

*Id.* at 99-100, 135 N.W.2d at 833-34. Our supreme court did not interpret the guardian's duty to preserve

[4] Section 319.19(1), (4) and (5), STATS. (1965), renumbered § 880.19, STATS., in 1971, is identical to § 880.19(1), (4) and (5), STATS., with two exceptions: the section was amended to be gender neutral and a reference to ch. 296, STATS., was changed when the chapter was renumbered ch. 786, STATS.

the guardianship estate to include distribution of guardianship estate assets; instead, the court expressly denied that § 319.19, STATS., (now § 880.19) permitted a guardian to make gifts outright. We conclude that the guardian's duty in § 880.19 to "preserve" estate assets does not include distributing guardianship estate assets to reduce estate taxes. Additionally, we conclude that the plain meaning of § 880.19(4), STATS., does not give Michael this power.

We conclude, however, that § 880.19(5)(b), STATS., is ambiguous, because it is capable of being understood by reasonably well-informed persons in two or more different senses. *Martin*, 162 Wis. 2d at 894, 470 N.W.2d at 904. One reasonable interpretation of § 880.19(5)(b) is that a guardian could gift assets to effectuate prudent estate planning, a purpose which may be in the best interests of the ward. Another reasonable interpretation is that the section contemplates only those expenditures made for the ward's and his or her dependents' benefit during the ward's lifetime. Because we conclude § 880.19(5)(b) is ambiguous, we look to the statute's scope, history, context, subject matter and object to determine the legislature's intent. *Zimmerman v. DHSS*, 169 Wis. 2d 498, 504-05, 485 N.W.2d 290, 292 (Ct. App. 1992).

Section 880.19(5)(b), STATS., states that the court may authorize the guardian to sell, mortgage, pledge, lease or exchange any property of the guardianship estate for several purposes. These include: (1) paying the ward's debts; (2) providing for the ward's care, maintenance and education; (3) providing for the care, maintenance and education of the ward's dependents; (4) investing the proceeds; and (5) any other purpose

931

which is in the best interest of the ward. *Ejusdem generis,* a rule of statutory construction, provides that where a general term is preceded by a series of specific terms, the general term is construed as being limited to an item of the same type or nature as those specifically enumerated. *Pluskota v. Roadrunner Freight Systems,* 188 Wis. 2d 288, 295, 524 N.W.2d 904, 907 (Ct. App. 1994).

In this case, the statute provides four specific purposes and one general purpose: "any other purpose which is in the best interest of the ward." Section 880.19(5)(b), STATS. Applying the rule of *ejusdem generis,* this general purpose must be construed as being limited to an item of the same nature as the specific purposes listed. The four specific purposes have in common the goal of providing for the immediate financial needs of the ward and his or her dependents. This may include paying bills or investing sale proceeds to preserve funds for the continued financial support of the ward and his or her dependents. However, construction of the general purpose to include gifting guardianship estate assets to benefit potential heirs and avoid estate taxes is not a purpose of the same type or nature as the other purposes specifically enumerated. This conclusion is consistent with our supreme court's holding in *Evans' Estate,* where the court analyzed § 319.19, STATS., (now § 880.19, STATS.) and noted that assets are to be expended or disposed of only to meet the fundamental needs of the ward or his dependents. *Evans' Estate,* 28 Wis. 2d at 99-100, 135 N.W.2d at 833.

For these reasons, we reject Michael's argument that § 880.19(5)(b), STATS., gives the circuit court the power to authorize the guardian to distribute the

assets of Stanley's guardianship estate. This conclusion disposes of Michael's argument that reducing Stanley's taxable estate is "in [Stanley's] best interest the same way that it would be in the best interest if [an attorney] had a client with an estate this size to engage in competent, thorough estate planning." The best interests contemplated by § 880.19(5)(b) do not include gifting guardianship estate assets to avoid estate taxes.

Our conclusion that § 880.19, STATS., does not provide the guardian authority to gift guardianship estate assets to avoid estate taxes is consistent with our examination of § 880.173, STATS. Section 880.173 states:

> (1) A guardian of the estate appointed under this chapter for a married person may exercise with the approval of the court, except as limited under s. 880.37, any management and control right over the marital property or property other than marital property and any right in the business affairs which the married person could exercise under ch. 766 if the person were not determined under s. 880.12 to be a proper subject for guardianship. Under this section, a guardian may consent to act together in or join in any transaction for which consent or joinder of both spouses is required or may execute a marital property agreement with the other spouse, but may not make, amend or revoke a will.
> (2) The powers under sub. (1) are in addition to powers otherwise provided for a guardian of the estate.

Section 880.173, STATS., created in 1985, gives the guardian of an estate for a married person additional rights not provided in other subsections. According to the Legislative Council Notes to 1985 Wis. Act 37, WIS.

STAT. ANN. § 880.173 (West 1991), the authority under § 880.173 includes the power to "minimize current or prospective taxes or expenses of administration of the guardianship estate or of the estate upon the married person's death." This is the power Michael seeks, but § 880.173 is unavailable to him because he is not representing a married person. The Wisconsin Supreme Court discussed the powers traditionally held by guardians in *In re F.E.H.*, 154 Wis. 2d 576, 453 N.W.2d 882 (1990). In *F.E.H.*, the court stated:

> Traditionally, the guardian of the estate had limited powers with respect to the property of the ward. Upon approval of the court, the guardian could sell, mortgage, pledge, lease, or exchange property of the estate for the purpose of paying the ward's debts, providing for the care, maintenance, and education of the ward or his or her dependents, investing the proceeds, or for any other purpose in the best interests of the ward. *See* sec. 880.19(5)(b), STATS. The guardian had no authority, however, to exercise any power over the ward's property which was not conferred by statute. Thus, *the guardian of the estate could not make a gift of property of the estate on the ward's behalf or exercise on the ward's behalf those property rights denominated as "personal" to the ward*, such as the right to change the beneficiary on a life insurance contract, make an election on behalf of an incompetent widow, or terminate the joint ownership of a bank account or government bonds.

*Id.* at 583-84, 453 N.W.2d at 885 (footnote omitted; emphasis supplied).[5] The court also recognized that

---

[5] Our supreme court has also denied guardians authorization to cash without necessity bonds held in joint tenancy, *In re Barnes' Will*, 4 Wis. 2d 22, 26, 89 N.W.2d 807, 809 (1958), to

the recently created powers conferred by § 880.173 supplement and broaden those powers otherwise provided for a guardian of an estate in ch. 880, STATS. *F.E.H.*, 154 Wis. 2d at 585, 453 N.W.2d at 885.

The supreme court's interpretation of §§ 880.19 and 880.173, STATS., indicates that only guardians of married wards are authorized under § 880.173 to make gifts from the guardianship estate. *See F.E.H.*, 154 Wis. 2d at 585, 453 N.W.2d at 885. If § 880.19 authorized the type of broad authority granted by § 880.173, there would have been no need to enact § 880.173. When the legislature enacts a statute, it is presumed to act with full knowledge and awareness of existing statutes. *State ex rel. McDonald v. Circuit Court*, 100 Wis. 2d 569, 578, 302 N.W.2d 462, 466 (1981). We must avoid any construction of a statute that would make a portion of the statute superfluous. *Madison Landfills, Inc. v. Libby Landfill Negotiating Comm.*, 188 Wis. 2d 613, 629, 524 N.W.2d 883, 890 (1994) (citation omitted). Thus, we conclude that § 880.173 created the

---

designate a beneficiary in a policy issued to the ward while the ward was competent, *Kay v. Erickson*, 209 Wis. 147, 150, 244 N.W. 625, 626 (1932), and to make an election for an incompetent widow, *Van Steenwyck v. Washburn,* 59 Wis. 483, 503-04, 17 N.W. 289, 292-93 (1883). For additional discussion of the limits on the guardian's power to act, *see Boehmer v. Boehmer,* 264 Wis. 15, 58 N.W.2d 411 (1953), where our supreme observed that in general,

> a guardian of the estate of the ward does not have legal title to the property of his ward, and has only certain powers and duties to deal therewith for the benefit of the ward. Many courts have described the fiduciary character of a guardian by stating that he is merely the conservator of the ward's property and his powers are only such as are essential to the temporary preservation of the estate.

*Id.* at 21, 58 N.W.2d at 414.

authority for guardians of married persons to engage in estate planning and that this power is not granted by § 880.19. Because we conclude § 880.19 does not provide Michael with the authority to gift assets from Stanley's guardianship estate, we affirm the circuit court's orders.

### DOCTRINE OF SUBSTITUTED JUDGMENT

Michael argues that this court should adopt the common law doctrine of substituted judgment and thereby allow the court to substitute its judgment for that of Stanley. Where it has been adopted, the doctrine of substituted judgment empowers the court to authorize a guardian to gift property of the guardianship estate, notwithstanding the absence of specific statutory authority, when the gift would both benefit the ward and carry out his or her probable actions if he or she were of full capacity. *F.E.H.*, 154 Wis. 2d at 588, 453 N.W.2d at 886-87 (citing *In re Christiansen*, 248 Cal. App. 2d 398, 56 Cal. Reptr. 505 (Dist. Ct. App. 1967)).

While our supreme court has not ruled specifically on a case where the guardian sought to distribute guardianship estate assets to effectuate estate planning, the court has refused to adopt the doctrine of substituted judgment in other cases. In *In re Pescinski*, 67 Wis. 2d 4, 226 N.W.2d 180 (1975), the court refused to adopt the doctrine of substituted judgment to authorize an operation removing an incompetent's kidney for the purpose of transferring it to the ward's sister. The court stated:

> Historically, the substituted judgment doctrine was used to allow gifts of the property of an incompe-

tent. If applied literally, it would allow a trial court, or this court, to change the designation on a life insurance policy or make an election for an incompetent widow, without the requirement of a statute authorizing these acts and contrary to prior decisions of this court.

We conclude that the doctrine should not be adopted in this state.

*Id.* at 8, 226 N.W.2d at 182 (footnote omitted); *see also In re L.W.*, 167 Wis. 2d 53, 482 N.W.2d 60 (1992) (adopting a best interests standard rather than a substituted judgment standard for determining whether to withdraw life-sustaining medical treatment from a ward).

While our supreme court has refused to adopt the common law doctrine of substituted judgment, the court has recognized the doctrine where it is found in § 880.173, STATS. This section, created in 1985, was based on Cal. Prob. Code § 2580 (West 1981) and Uniform Probate Code § 5-407 (1983), both of which codify the common law equitable doctrine of substituted judgment. *F.E.H.*, 154 Wis. 2d at 588, 453 N.W.2d at 886-87.[6] In *F.E.H.*, our supreme court did not invoke the doctrine on its own but instead recognized that the legislature had chosen to adopt the doctrine of substituted judgment. *Id.* at 588-89, 453 N.W.2d at 887. In similar fashion, this court will invoke the doctrine of substituted judgment only where the legislature has adopted the doctrine, as it did in § 880.173. Thus, if

---

[6] *See also* Legislative Council Notes to 1985 Wis. Act 37, WIS. STAT. ANN. § 880.173 (West 1991) (§ 880.173 is based primarily on the permissible court orders set forth in § 5-407 of the Uniform Probate Code and the California statutory provision for substituted judgment).

Michael wishes to pursue authorization to perform estate planning for Stanley's guardianship estate, he must look to the legislature rather than this court.

For the foregoing reasons, the circuit court's two orders denying Michael's request for authorization to gift guardianship estate assets are affirmed.

*By the Court.*—Orders affirmed.