IN the MATTER OF the GUARDIANSHIP OF SCOTT G. G.:

MARJORIE A. G., Petitioner-Appellant,

v.

DODGE COUNTY DEPARTMENT OF HUMAN SERVICES,
Respondent-Respondent.

Court of Appeals

*No. 02–1121. Submitted on briefs November 11, 2002.—Decided
February 27, 2003.*

2003 WI App 52

(Also reported in 659 N.W.2d 438.)

On behalf of the petitioner-appellant, the cause was submitted on the briefs of *John A. Stocking* of *Petrie & Stocking, S.C.*, Milwaukee.

On behalf of the respondent-respondent, the cause was submitted on the brief of *Steven G. Bauer*, assistant corporation counsel of Juneau.

Before Vergeront, P.J., Roggensack and Deininger, JJ.

¶ 1. DEININGER, J. Marjorie A.G., guardian of her disabled son Scott, appeals an order which denied her request to transfer her ward's property to a "Medicaid Payback Trust." She claims the circuit court erred in concluding that the transfer in question is not among those permitted by WIS. STAT. § 880.19 (2001–02),[1] which governs the authority of guardians to manage their wards' property. We conclude that § 880.19(5)(b) permits the proposed transfer because it is an "exchange [of] property of the guardianship estate . . . for the purpose of . . . providing for the ward's care." *Id.* Accordingly, we reverse the appealed order and remand for the circuit court to determine whether, and on what terms, the proposed transfer should be approved. *See id.*

## BACKGROUND[2]

¶ 2. Scott G. is forty-one years old and has been under guardianship throughout his adulthood due to "developmental disabilities attributable to mental re-

---

[1] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

[2] The circuit court did not conduct an evidentiary hearing on the issue under review. It does not appear, however, that such a proceeding was necessary because neither party asserts the existence of a factual dispute. The background facts are taken from the circuit court's orders, and from the parties' pleadings, memoranda and briefs.

tardation." Scott's mother, Marjorie A.G., is his guardian. In 1992, the federal government awarded Scott some $360,000 under the Vaccine Compensation Act. In addition, the settlement of Scott's claim provided him with a monthly annuity which now pays some $6,000 per month.

¶ 3. Marjorie, as Scott's guardian, established a trust in 1991 to receive the Vaccine Compensation Act payments. Marjorie deposited the 1992 lump sum payment and all subsequent monthly payments directly into Scott's trust. She petitioned the court in 2001 to retroactively authorize these transfers of Scott's property to the trust, averring that:

> The Trust was created specifically to conform to federal and state rules, which permitted Scott, as a recipient of Supplemental Security Income ("SSI") and Medical Assistance benefits ("MA") to have such a Trust, and to have the Vaccine Compensation payments deposited directly into the Trust.

Marjorie further averred that she did not report and account for these payments as guardianship assets because she viewed them as "deposits to the Trust" for which she was a mere "conduit," and because the court had notified her that she could discontinue annual financial reports as guardian because "all Scott's income was being used for his care."

¶ 4. Marjorie's petition requested the court to both retroactively approve the past transfers and order that all future monthly annuity payments "shall be assigned to the Trust." Marjorie asserted that Scott "will require 24 hour care for the rest of his life"; that although he now lives with Marjorie, he relies "on daily care provided through a Medical Assistance funded program"; and that if the transfers to the trust were not

allowed, "Scott will be ineligible for any public benefit program[,] [h]is funds will be depleted and, after my death, he will require institutionalization."

¶ 5. The court appointed a guardian ad litem, who recommended that Marjorie's petition be granted.[3] The Dodge County Human Services and Health Department, however, notified the court that it objected to the petition and requested a hearing on the matter. At the hearing, the department informed the court that it did not oppose the approval of prospective transfers to a trust, but it argued that the court could not enter a "nunc pro tunc" order approving all past payments to the trust. The court tentatively approved Marjorie's transfer of "all future monies received by the guardian by monthly annuity," and requested that Marjorie submit an order acceptable to the department. The court also asked the parties to brief the retroactivity issue.

¶ 6. The parties could not agree, however, on the trust provisions necessary for the trust to receive Scott's future annuity payments. The court then issued a decision and order in which it concluded that "it would be improper to issue [an] order nunc pro tunc to 1992." It also concluded that "[t]he reasoning of [*Michael S.B. v. Berns*, 196 Wis. 2d 920, 540 N.W.2d 11 (Ct. App. 1995)] precludes the type of transfer sought here." Accordingly, the court declined to approve either the past or future transfers of the Vaccine Compensation payments to a trust for Scott's benefit, and it ordered that all current trust assets and the future payments be held and accounted for in the guardianship estate.

---

[3] Although he did not file a separate brief in this court, the guardian ad litem has informed us that he supports Marjorie's position in this appeal as being in Scott's best interest.

¶ 7. Marjorie moved for reconsideration, "requesting that all guardianship assets, both those previously received and those to be received in the future, be transferred to a trust that meets all current Medical Assistance requirements." (She did *not* ask the court to reconsider its refusal to retroactively approve past transfers to the 1991 trust.) In support of her new request, Marjorie asserted that a transfer of Scott's property to a newly-established "Medicaid Payback Trust" was in his best interest, authorized by Wis. Stat. §§ 49.454(4) and 880.19(5)(b), and consistent with *Michael S.B.* The department, however, now "having the benefit of the Court's decision," reversed its position on future transfers and argued that Marjorie's motion for reconsideration should be denied.

¶ 8. The court denied the motion in a decision and order entered on January 22, 2002. In it, the court emphasized that it did not disapprove of the proposed transfer as a discretionary matter, but believed the proposed transfer was simply not authorized by law:

> A Medicaid payback trust certainly comes closer to "preserving" the ward's assets than gifting [as in *Michael S.B.*] would. It is clear to the Court that the proposed trust would—at least—maximize the financial resources available for Scott [ ]'s care. However, while it is necessary, it is not enough for a guardian's actions to be in the ward's best interest. A guardian's actions must also comply with the law .... [T]his Court is convinced that Wisconsin Law does not currently permit guardians for unmarried wards to transfer guardianship assets into irrevocable trusts.

¶ 9. Marjorie filed her notice of appeal from the January 22 order on April 19, 2002. The department moved to dismiss the appeal on the grounds that this court lacks jurisdiction over an appeal from an order

denying reconsideration "where the only issues raised on the motion for reconsideration were disposed of in the prior order [of December 18, 2001]," the time for appeal of which had expired. We concluded, however, that Marjorie's reconsideration motion, which contained a request for approval of only the prospective transfer of assets to a newly proposed trust, and which was supported by new arguments as to why this was legally permitted, satisfied "the new issue test."

¶ 10. Accordingly, the January 22 order, but only that order, is properly before us. That is, the only issue we address is whether a guardian may, with court approval, transfer a ward's assets to a "Medicaid Payback Trust" as proposed by Marjorie. We do not address any questions relating to Marjorie's past handling of the Vaccine Compensation payments, the circuit court's authority to enter "nunc pro tunc" orders approving past transfers, or the suitability of the 1991 trust as a recipient of Scott's payments.

## ANALYSIS

■

¶ 11. Under state and federal law, assets an individual transfers to a trust for his or her own benefit are generally treated as the person's assets for purposes of determining his or her eligibility for medical assistance benefits. *See* WIS. STAT. § 49.454; 42 U.S.C. § 1396p(d)(2)(A). An exception is made, however, for what are known as "Medicaid Payback Trusts":

> A trust containing the assets of an individual under age 65 who is disabled . . . and *which is established for the benefit of such individual by a* parent, grandparent, *legal guardian of the individual,* or a court if the State will receive all amounts remaining in the trust upon

> the death of such individual up to an amount equal to the total medical assistance paid on behalf of the individual under a State plan under this subchapter.

42 U.S.C. § 1396p(d)(4)(A) (emphasis added).

¶ 12. The Wisconsin Legislature has expressly adopted the quoted exception for Medicaid Payback Trusts. *See* WIS. STAT. § 49.454(4) ("This section does not apply to any trust described in 42 U.S.C. 1396p(d)(4) . . . ."). Marjorie first argues, therefore, that because the incorporated federal statute recognizes that a guardian may establish such a trust for his or her ward, she is authorized by § 49.454(4) to transfer Scott's property to a Medicaid Payback Trust even if WIS. STAT. ch. 880 would not permit such a transfer. We do not address this contention, however, because we agree with Marjorie's second argument—that WIS. STAT. § 880.19 permits the transfer in question.

█

¶ 13. WISCONSIN STAT. § 880.19 governs a guardian's management of his or her ward's assets. Whether the statute permits a guardian to transfer a ward's assets to a trust of the type Marjorie proposes is a question of law which we decide de novo. *See Michael S.B.*, 196 Wis. 2d at 928. Under § 880.19(1), a guardian must "take possession of all of the ward's real and personal property," and "protect and preserve it . . . account for it faithfully . . . and at the termination of the guardianship . . . deliver the assets of the ward to the persons entitled thereto." As to "sales and other dispositions" of a ward's property, the statute provides:

> *The court,* on the application of the guardian of the estate or of any other person interested in the estate of any ward, after such notice if any, as the court directs, *may authorize* or require *the guardian to* sell, mort-

gage, pledge, lease or *exchange any property of the guardianship estate upon such terms as the court may order, for the purpose of* paying the ward's debts, *providing for the ward's care,* maintenance and education and the care, maintenance and education of the ward's dependents, investing the proceeds or for any other purpose which is in the best interest of the ward.

Section 880.19(5)(b) (emphasis added).

¶ 14. Marjorie contends that the language of WIS. STAT. § 880.19(1) and (5)(b) permits a court to approve the transfer she proposes. Marjorie asserts that, without the transfer, Scott "will not qualify for Medical Assistance or community programs, and he will lack insurance coverage to meet his very high medical and therapy costs." She argues that transferring the assets to a trust that will permit Scott to receive medical assistance and other governmental benefits will thus fulfill her duty to "protect and preserve" Scott's assets. *See* § 809.19(1). She notes that utilization of the Medicaid Payback Trust will avoid the depletion of the guardianship estate, making Scott's assets available to meet his considerable needs that are not met by the governmental programs.

¶ 15. Marjorie goes on to assert that a transfer of Scott's assets to a Medicaid Payback Trust is an "exchange" authorized under WIS. STAT. § 880.19(5)(b) because Scott will receive the beneficial interest in the trust in return for relinquishing his legal title to the property. *See* § 880.19(1) (title to guardianship property remains in the ward notwithstanding the guardian's possession). Furthermore, according to Marjorie, because the proposed exchange is "for the purpose of paying the ward's debts [and] providing for the ward's care," a court may authorize her to make it "upon such

terms as the court may order." Section 880.19(5)(b). We agree that under the plain language of § 880.19(5)(b) a circuit court may approve the transfer of guardianship assets to a Medicaid Payback Trust for the benefit of a ward.[4]

¶ 16. The department urges us, however, to adopt the circuit court's reasoning that, because WIS. STAT. § 880.175 expressly authorizes a transfer to "an existing revocable living trust created by the person for the benefit of himself or herself and those dependent upon the person for support," the absence of similar authority in WIS. STAT. ch. 880 for a guardian to establish a Medicaid Payback Trust means the legislature did not intend to grant such authority. In the department's view, Marjorie's interpretation of WIS. STAT. § 880.19(1) and (5)(b) would render § 880.175 "surplusage" because, if the former statute permits transfers to existing trusts for the benefit of the ward, there would have been no need for the legislature to enact the latter. Thus, according to the department, § 880.19 cannot be read so

---

[4] Marjorie notes that the department initially agreed with this proposition. In a memorandum to the circuit court, the department asserted that the "exchange of guardianship property for a property interest in an irrevocable trust would be an allowable exchange under the laws of guardianship if the exchange involves court-ordered terms that the trust meet the requirements of a 'Medicaid Payback Trust', and includes clauses to give the trust the same protections as given guardianship property." The department, however, is *not* estopped from arguing on appeal that such a transfer is not statutorily authorized. The circuit court ruled contrary to the department's contention, and it is "not forever bound to a losing argument." *Harrison v. LIRC*, 187 Wis. 2d 491, 497, 523 N.W.2d 138 (Ct. App. 1994). As we discuss, we conclude the department was right the first time.

broadly, and the lack of a separate provision authorizing guardians to establish Medicaid Payback Trusts is fatal.

¶ 17. We are not persuaded by this argument. WISCONSIN STAT. § 880.175 was enacted in 1969. *See* Laws of 1969, ch. 267. Its apparent purpose, at least in part, was to permit a court to effectuate an existing estate plan created by a ward prior to his or her incapacity, by allowing the court to transfer a ward's property to "an existing revocable living trust created by the person." Section 880.175. Significantly, such a trust may benefit not only the ward but also "those dependent upon the [ward] for support," and a request for the transfer may come from "a parent, the spouse, any issue or next of kin" of the ward, who presumably might benefit from the trust. *Id*.

■

¶ 18. The fact that the legislature saw fit by enacting WIS. STAT. § 880.175 to authorize a specific type of transfer which might otherwise be deemed contrary to the requirement in WIS. STAT. § 880.19(1) that a guardian "protect and preserve" a ward's property, cannot be taken to imply legislative disapproval of exchanges of property, such as the one proposed by Marjorie, which plainly come within the allowable purposes specified in § 880.19(5)(b). Under the applicable federal and state statutes, a Medicaid Payback Trust may benefit only the ward, and its use permits the ward to qualify for substantial medical benefits. The transfer will thus plainly serve the purpose of "providing for the ward's care." *Id*. We agree with the department's contention in the circuit court that "[t]he fact that someone is incompetent and under guardianship should not prevent that person from being able to avail themselves of the extra resources for care that can flow from creating such a trust."

¶ 19. We next address the impact of our opinion in *Michael S.B. v. Berns*, 196 Wis. 2d 920, 540 N.W.2d 11 (Ct. App. 1995), on the present facts. The circuit court concluded that the "reasoning in [*Michael S.B.*] precludes the type of transfer sought here." That is not the case, however. We concluded in *Michael S.B.* that "the guardian's duty in § 880.19 to 'preserve' estate assets does not include distributing guardianship estate assets to reduce estate taxes." *Id.* at 931. In determining that such a depletion of the ward's estate by gifting was also not among the allowable purposes enumerated in Wis. Stat. § 880.19(5)(b), we noted that "[t]he four specific purposes have in common the goal of providing for the immediate financial needs of the ward." *Id.* at 932. Here, as we have discussed, the proposed transfer to a Medicaid Payback Trust furthers precisely this goal by increasing the resources available to Scott to meet his many needs. In short, we conclude that nothing we said in *Michael S.B.* precludes the result we reach today.

¶ 20. Finally, we note that courts in other jurisdictions which have considered the question have come to the same conclusion we do here. The Connecticut Supreme Court decided in *Department of Social Services v. Saunders*, 724 A.2d 1093 (Conn. 1999), that a probate court was authorized to permit the conservator of a disabled ward "to establish an irrevocable . . . trust funded with the net proceeds recovered in the settlement of a negligence action . . . which would not be considered an available resource for the purpose of determining ongoing medicaid eligibility." *Id.* at 1094–95. The trust in question, like the trust Marjorie proposes, was "drafted in conformity with the specifications of 42 U.S.C. § 1396p(d)(4)(A)." *Id.* at 1096.

¶ 21. The relevant Connecticut statute directed that "[t]he conservator shall manage all the estate and

690

apply so much of the net income thereof, and, if necessary, any part of the principal of the property, which is required to support the ward." *Id*. at 1100. The court found this language "broad enough to encompass the creation of the trust at issue in this appeal." *Id*. In rejecting the department's argument to the contrary, the court reasoned as follows:

> Although transferring a ward's assets into a trust does indeed divest the ward of legal title to the assets, the ward remains the sole person who can benefit from the trust. [The ward] is, therefore, the equitable owner of the assets . . . . [C]reation of the trust permits [the ward] to benefit from the tort settlement for a much longer period of time than he would if the trust were not allowed. Legal title to the assets would be a meaningless possession if purchased at the cost of years worth of additional supplemental needs.

*Id*. at 1105 (footnotes omitted).

¶ 22. We conclude that the Connecticut Supreme Court's determination that a statute similar to Wis. Stat. § 880.19(1) permits the transfer of a ward's property to a Medicaid Payback Trust lends persuasive support to our conclusion that the Wisconsin statute does likewise. Moreover, as we have discussed, the existence of § 880.19(5)(b) renders our statute even more amenable to such an interpretation.[5]

---

[5] *See also Guardianship & Conservatorship of Watkins*, 947 P.2d 45 (Kan. Ct. App. 1997) (concluding that conservator of two disabled wards was authorized under state law to establish trusts meeting the requirements of 42 U.S.C. § 1396p(d)(4)(A)); *Matter of Moretti*, 606 N.Y.S.2d 543, 547–48 (N.Y. Sup. Ct. 1993) (same, and further concluding that to the extent state statutes might restrict a guardian from establishing a Medicaid-qualifying trust recognized by federal law, "they are not binding

¶ 23. In closing we note that Marjorie acknowledges that, among the terms the circuit court might order if it decides to approve the transfer, is a requirement that the trustee provide "the same annual accounting required in a guardianship matter." The department argued in the circuit court that the court could approve the proposed transfer to a Medicaid Payback Trust "by providing the protections under guardianship law that the trust actually be for the care of the ward," as well as ordering "protections for the preservation of the corpus" such as "prohibitions and restrictions on investments and distributions." Because the record contains no draft of the new trust document Marjorie proposes, we do not know whether it contains such provisions. In any event, whether the requested transfer should be approved and, if so, on what terms, are matters on which the circuit court—not this court—should exercise its discretion. We remand to permit the circuit court to do so.[6]

---

on this court since any such inconsistency would be violative of the supremacy clause" of the U.S. Constitution).

[6] The Connecticut Supreme Court noted in *Department of Social Services v. Saunders*, 724 A.2d 1093 (Conn. 1999), that a probate court in that state

> may exert considerable influence over the terms of the trust, thus ensuring that the trust would be managed to the court's satisfaction. Moreover, the Probate Court will have jurisdiction over Saunders' accounts in her capacity as conservatrix . . . . The statutorily granted power to demand periodic accounting of a conservatrix further demonstrates the court's continuing supervision of Saunders and her use of the trust assets. Finally, under [the Connecticut statute] which provides that "[a]ny beneficiary of an inter vivos trust may petition a court of probate having jurisdiction . . . for an accounting by the trustee," the department, as remainderman of the trust, will have standing to petition for an accounting should it question the trustee's use of the trust assets. Therefore, although the form of ownership of Jamie's estate will

## CONCLUSION

¶ 24. We conclude that WIS. STAT. § 880.19(5)(b) permits the proposed transfer as an "exchange [of] property of the guardianship estate . . . for the purpose of . . . providing for the ward's care." *Id.* Accordingly, we reverse the appealed order and remand for the circuit court to determine whether and upon what terms Marjorie may transfer guardianship assets to a Medicaid Payback Trust.

*By the Court.*—Order reversed and cause remanded.

change, Saunders' responsibilities will remain the same and the Probate Court will continue to have jurisdiction over her as both conservatrix and trustee.

*Id.* at 1105–06 (citations and footnotes omitted). We conclude that Wisconsin circuit courts possess similar authority. *See, e.g.,* WIS. STAT. §§ 701.14, 880.192, and 880.25–.253. *See also Guardianship & Conservatorship of Watkins,* 947 P.2d at 48 ("We recognize the added responsibility placed on Kansas courts, given this ruling, to both scrutinize a trust to insure compliance with both state and federal law and to require accountings to insure that the trust assets are not wasted or dissipated contrary to law.").